UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| THERESA RICHARDSON, *et al.*,<br><br>                        Plaintiffs,<br><br>        v.<br><br>DONALD J. TRUMP, *in his official capacity as President of the United States*, *et al.*,<br><br>                        Defendants. | Civil Case No. 20-cv-02262 (EGS) |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION
TO ENFORCE AND MONITOR COMPLIANCE WITH PRELIMINARY
INJUNCTION AND REQUEST FOR EXPEDITED BRIEFING AND HEARING**

BERG & ANDROPHY

David H. Berg
(*Admitted pro hac vice*)
Joel M. Androphy
D.D.C. Bar No. 999769
James W. Quinn
(*Admitted pro hac vice*)
Bronwyn M. James
(*Admitted pro hac vice*)
120 West 45th Street, 38th Floor
New York, NY 10036
Tel: (646) 766-0073

*Attorneys for Plaintiffs*

OF COUNSEL:

Kathryn Page Berg
120 West 45th Street, 38th Floor
New York, NY 10036
(*Admitted pro hac vice*)
Tel: (646) 766-0073

1

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

BACKGROUND .................................................................................................................... 3

    A.    The Court Enjoined the July 2020 Policy
         Changes Regarding Late and Extra Trips ............................................................... 3

    B.    Defendants Fail To Comply with the Court's
         Order, as Evidenced by Their Own Data ............................................................... 4

    C.    Defendants' Belated Efforts to Comply Fall Short of this Court's Orders ............. 6

ARGUMENT ........................................................................................................................... 7

    A.    There Is, At a Minimum, a "Significant Question" Regarding
         Defendants' Noncompliance with the Court's Preliminary Injunctions ................. 8

    B.    Defendants Must Immediately Provide Updated, Current
         Data to Allow Plaintiffs and the Court to Assess the Need
         for Further Equitable Relief Before Election Day .................................................. 9

CONCLUSION ...................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Cases**

*Abdi v. McAleenan*, 2019 WL 19153063 (W.D.N.Y. Apr. 30, 2019) ............................................ 8

*Cal. Dep't of Social Servs. v. Leavitt*, 523 F.3d 1025 (9th Cir. 2008) ........................................... 7

*Damus v. Nielsen*, 328 F.R.D. 1 (D.D.C. 2018 ................................................................................ 7

*Heredia Mons v. Wolf,* 2020 WL 4201596 (D.D.C. July 22, 2020) ............................................... 8

*NAACP v. USPS*, 2020 WL 5995032 (D.D.C. Oct. 10, 2020) ................................................ 1, 3, 4

*New York v. Trump*, 2020 WL 5763775 (D.D.C. Sept. 27, 2020) .......................................... 1, 3, 4

*Vote Forward v. DeJoy*, 2020 WL 5763869 (D.D.C. Sept. 28, 2020) ................................. 1, 3, 4, 5

Plaintiffs Theresa Richardson, Christopher Carroll, Gina Arfi, and Aida Zygas (collectively, "Plaintiffs"), by and through their undersigned attorneys, respectfully seek relief from this Court to compel and monitor compliance with the Court's preliminary injunctions barring Defendants Donald J. Trump, Louis DeJoy ("DeJoy"), and United States Postal Service ("USPS" and, collectively, "Defendants") from continuing to enforce policy changes that have caused a dramatic drop in the number of late and extra trips at USPS (the "July 2020 Policy Changes").[1] In light of Defendants' failure to clearly reverse those Policy Changes, Plaintiffs seek the prompt production of data to assess Defendants' compliance and a hearing on Tuesday, October 27—a week before Election Day—to ascertain whether additional equitable relief will be necessary. This motion is being filed concurrently in certain related cases pending before this Court.

For several weeks, Defendants failed to take *any* action in response to the Court's Orders in the Parallel Litigation, the first of which was issued on September 27, because they believed "there wasn't anything to change." USPS's data confirms their non-compliance. Through October 15, the most recent date for which USPS has produced data, the number of late and extra trips has remained depressed, far ***below*** the levels that predated the July 2020 Policy Changes. Likewise, as of the week of October 3, on-time service scores remained several points ***below*** their pre-July 2020 levels. And although USPS belatedly issued some additional communications to USPS employees in the last few days—none of which unequivocally rescinded the July 2020 Policy Changes that curtailed the use of late and extra trips—Defendants

---

[1] *See* Order, ECF No. 64; *see also* Order, *New York v. Trump*, No. 20-cv-2340 (EGS) (hereinafter "*New York*"), (D.D.C. Sept. 27, 2020), ECF No. 51; Order, *Vote Forward v. DeJoy*, No. 20-cv-2405 (EGS) (hereinafter "*Vote Forward*") (D.D.C. Sept. 28, 2020), ECF No. 31; Order, *NAACP v. USPS*, No. 20-cv-2295 (EGS) (hereinafter "*NAACP*"), (D.D.C. Oct. 10, 2020), ECF No. 31 (collectively, the "Parallel Litigation").

have rejected Plaintiffs' request for daily data reporting on service scores and late and extra trips, which is critical to evaluating the effect of these recent communications and Defendants' compliance with this Court's injunction.  Defendants object on the grounds that Plaintiffs' request is unduly burdensome, but the type of data Plaintiffs seek is consistent with what Defendants have shown the ability to generate both prior to and during the Parallel Litigation.  Moreover, given Defendants' foot-dragging and failure to clearly reverse the July 2020 Policy Changes, they cannot reasonably complain about the inconvenience of having to demonstrate their compliance.  Furthermore, producing this data is consistent with Defendants' own stated interests—ensuring timely delivery of Election Mail.

There are less than two weeks until Election Day.  Every day until then, hundreds of thousands of voters will be attempting to obtain and return their mail-in and absentee ballots.  There is an urgent need for prompt action to remedy Defendants' failure to comply with the Court's injunction and to ensure that the unlawful July 2020 Policy Changes have not compromised the timely delivery of mail.  Plaintiffs therefore request that the Court (1) schedule a hearing for **Tuesday, October 27**—one week before Election Day—and (2) require Defendants to produced updated, current data regarding mail delivery timelines no later than 12 hours before that hearing, so that Plaintiffs and the Court can assess what further equitable relief is necessary to ensure compliance with this Court's preliminary injunctions in this case and the Parallel Litigation.  Plaintiffs further request that the Court order Defendants to produce the same data on a daily basis, going forward.

Plaintiffs ask that the Court expedite briefing of this motion, directing Defendants to submit their opposition brief by Friday, October 23 at 5:00 p.m.

**BACKGROUND**

A. **The Court Enjoined the July 2020 Policy Changes Regarding Late and Extra Trips**

Beginning on September 27, 2020, this Court issued a series of preliminary injunctions in the four related cases in the Parallel Litigation, including this one, challenging the July 2020 Policy Changes implemented by Defendants.[2] The Court found that Defendants' July 2020 Policy Changes aimed at reducing the number of late and extra trips would impose undue burdens on Plaintiffs' and other voters' constitutional right to vote, and that absent injunctive relief, Plaintiffs faced irreparable harm. *See* Memorandum Opinion, Dkt. No. 65; *see also* Memorandum Opinion, *New York*, 2020 WL 5763775 (D.D.C. Sept. 27, 2020); Memorandum Opinion, *Vote Forward*, 2020 WL 5763869 (D.D.C. Sept. 28, 2020); Memorandum Opinion, *NAACP*, 2020 WL 5995032 (D.D.C. Oct. 10, 2020). The Court unequivocally "ORDERED that pursuant to the Order, USPS are HEREBY ENJOINED from enforcing the Late/Extra Trips Policy . . . ." (Order, ECF No. 64, at 1[3])

In opposing Plaintiffs' motion, USPS insisted that they had not "banned" late and extra trips. (*See* Defs. Resp. to Pls.' Mot. for Prelim. Inj. ("Resp."), ECF No. 55, at 19 n.6); *see also Vote Forward*, ECF No. 21, at 19 n.6; *New York*, ECF No. 30, at 25; *NAACP*, ECF No. 21, at 18 n.6. But USPS acknowledged that upon discussing the matter with Defendant Louis DeJoy ("DeJoy"), senior executives, including Robert Cintron ("Cintron"), USPS's Vice President of Logistics drafted and distributed a set of "guidelines" regarding the use of late and extra trips (the "Cintron Guidelines"). (*See* Resp. at 18); Tr. of August 24, 2020 Hearing before House Comm. on Oversight and Reform (attached as Ex. A) at 56, 183 (stating that DeJoy made only

---

[2] *See supra* n.1.

[3] This Court entered similar orders in the other cases in the Parallel Litigation. *See supra* n. 1.

3

"one change" in early July: he "asked the team to run the trucks, transportation on time and mitigate extra trips."); *see also Vote Forward*, ECF No. 21, at 18–19; *New York*, ECF No. 30, at 18; *NAACP*, ECF No. 21, at 18.  And Defendants have not and cannot dispute that the communication of the Cintron Guidelines was immediately followed by a sharp decline in on-time service scores and late and extra trips.  (*See* Resp. at 19); *see also Vote Forward*, ECF No. 21, at 19–20; *New York*, ECF. No. 30, at 19; *NAACP*, ECF No. 21, at 18–19.

The Court's decision acknowledged Defendants' position that "late or extra trips are not 'banned,'" but "continue 'at a reduced level.'"  *Richardson*, 2020 WL 5969270, at *2 (quoting Suppl. Cintron Decl., ECF No. 55-3, ¶ 4); *see also Vote Forward*, 2020 WL 5763869, at *2 (same); *New York*, 2020 WL 5763775, at *2 (same); *NAACP*, 2020 WL 5995032, at *3 (same).  The Court also considered additional operational instructions and guidelines that USPS adopted on September 21, 24, and 25 and submitted for the Court's consideration.  *See*, *e.g.*, *Richardson*, 2020 WL 5969270, at *2 (quoting Notice of Suppl. Materials, Ex. A, ECF No. 62-1 at 4 (September 21 guidelines)); *see also Vote Forward*, 2020 WL 5763869, at *2; *New York*, 2020 WL 5763775, at *2 (same); *NAACP*, 2020 WL 5995032, at *3 (same).[4]  Those materials confirmed to USPS employees that late and extra trips were not banned but did not advise USPS employees that the Cintron Guidelines were otherwise inoperative.  By granting Plaintiffs' motion, the Court made clear that these attempts at clarification were inadequate.

**B.     Defendants Fail To Comply with the Court's
        Order, as Evidenced by Their Own Data**

For over two weeks after the Court's initial order enjoining the July 2020 Policy Changes, Defendants made no efforts to comply because, they contend, Defendants "did not ban

---

[4] Defendants attached the September 21, 24, and 25 USPS guidelines as Exhibits A, B, and C, respectively, to their Notice of Supplemental Materials.  *See* ECF Nos. 62-1, 62-2, 62-3.

4

[late trips and extra trips]" and thus "there wasn't anything to change." Tr. of Deposition Robert Cintron, dated Oct. 15, 2020 ("Cintron Dep. Tr."), at 158:24-159:15 (attached as Ex. B)  Indeed, Cintron, in his capacity as USPS's 30(b)(6) representative, who had authored and released the Cintron Guidelines, stated at his deposition late last week that "we have not rescinded the guidelines" issued in July regarding late and extra trips—effectively flouting the Court's rulings. (*Id.* at 91:16-93:9; *see also id*. at 76:23-77:2 ("Q. So it's fair to say that the Cintron Guidelines remain in effect at the Postal Service? A. They do."))

The relevant data confirm Defendants' failure to comply with the Court's injunctions.  As the Court noted in its Opinion, "the August 29, 2020 service score [88.04%] was 3.56 percentage points lower than the pre-policy average" of 91.6% from January 4, 2020 to July 4, 2020.  *Vote Forward*, 2020 WL 5763869, at *2 (citing Suppl. Decl. of Justin Grimmer, dated Sept. 20, 2020, ¶ 5, *Vote Forward* (Sept. 20, 2020), ECF No. 24-2 (attached as Ex. K)).  Since then, USPS's weekly ***on-time service scores have dropped even lower***—to 84.23% on September 19, 85.97% on September 26, and 86.15% on October 3, the most recent week for which data is available. *See* National Service Scores at 1 (attached as Ex. C); *see also* Cintron Dep. Tr. at 132:10-23. More granular, district-level service scores show the same picture: 92.5% of the USPS districts had *lower* service scores than the six-month average from before the July 2020 Policy Changes. *See* Suppl. Decl. of Justin Grimmer, dated Oct. 18, 2020, ¶¶ 6, 12, *New York*, ECF No. 59-23 (attached as Ex. D).

Furthermore, the number of extra and late trips taken each day continue to fall far short of pre-policy levels.  By USPS's own admission, there were ***far fewer extra trips*** between October 1 and 10 (around 500-700 per day) than the period preceding the policy changes in July (ranging from 1,900-2,400 trips per day).  *See* March 1 through October 11 Extra Trips Data (attached as

5

Ex. E); Cintron Dep. Tr. at 126:9-127:13.  Similarly, there were *far fewer late trips* from October 1 to October 11 (approximately 2,000 trips per day) compared to the number of late trips from June 1 to July 10 (3,000-5,000 trips per day).  *See* March 1 through October 11 Late Trips Data (attached as Ex. F); *see also* Cintron Dep. Tr. at 121:16-123:6.  In fact, as of mid-October, the number of late and extra trips per day has merely recovered to the numbers from immediately *after* the July 2020 Policy Changes.  *See* Cintron Dep. Tr. at 123:11-23 (late trips); *id.* at 127:5-24 (extra trips).  More recent data up until October 15 confirms this continuing drop in the number of extra and late trips.  *See* Daily Late and Extra Trips October 1, 2020 – October 15, 2020 (attached as Ex. G).[5]

### C. Defendants' Belated Efforts to Comply Fall Short of this Court's Orders

From October 13 to 20—more than two weeks after the Court granted the first preliminary injunction in these cases—USPS issued a series of additional memos and stand-up talks to its employees.

On Friday, October 16, Cintron emailed regional vice presidents and managers, along with a two-part "Stand-Up Talk" to be posted on each facility.  *See* Decl. of Joshua Colin, dated Oct. 16, 2020 ("Colin Decl."), *Pennsylvania v. DeJoy*, No. 20-cv-4096 (October 16, 2020), ECF No. 76-5, ¶ 17; *see also id.*, Ex. 2 (Mandatory Stand-Up Talk, Part I and II).  Cintron's email "reinforce[d] what [he] believe[s] recent communications from HQ have already made clear: The guidelines provided to field operations in July regarding late and extra trips set no hard

---

[5] Cintron, USPS's 30(b)(6) representative, explained that the Columbus Day holiday accounted for the increase in extra trips on October 11 and 12. *See* Cintron Dep. Tr. at 125:9-126:5 ("Usually around holidays we got a big push. We certainly did this holiday in terms of getting prepared and cleaned up, heading into one of the busiest weeks for us.  So we would have authorized a lot of extras. There was a lot of extra planning.").  This momentary increase is not indicative of the overall trend.  Indeed, the number of extra trips decreased to the 700s by October 14 and 15.  *See* Ex. G.  Recent data confirms approximately 2,000 late trips per day from October 1 to October 15. *Id.*

limitations on these trips, as made clear by a recently circulated Stand-Up Talk (attached)." *Id.* ¶ 17.  The email went on to note that the July 2020 "guidelines may provide an effective tool for addressing any questions managers may have concerning when to run lates and extras," while noting that "they **should not** be read in a manner that conflicts with the attached Stand-Up Talk." *Id.* (emphasis in original).  The attached Stand-Up Talk, in turn, stated that "[t]ransportation, in the form of late and extra trips is authorized and shall be used where reasonably necessary to meet service standards and service performance targets," and that "[t]he Postal Service shall use extra trips to meet service commitments, except when not feasible." *Id.*, Ex. 2 at 3.

USPS also issued two memoranda specific to Election Mail, on October 13 and October 20—more than two and three weeks, respectively, after the first preliminary injunction issued by this Court.  The October 13 memorandum again "reiterate[d]" that "late and extra trips are not banned." *Id.*, Ex. 1 at 3.  As with Defendants' other communications, it failed to state that the Cintron Guidelines were rescinded, revoked, or suspended.  It did, however, state that "late and extra trips that would facilitate the on-time delivery of Election Mail are authorized and encouraged." *Id.*[6]  An October 20, 2020 memorandum (attached as Ex. I) detailed specific plans to support the handling of Election Mail that are "expected to be executed by local management between October 26 and November 24 . . . ."  Ex. I at 2.

## ARGUMENT

The Court has "inherent power to enforce its judgments," pursuant to which it may order limited discovery. *Damus v. Nielsen*, 328 F.R.D. 1, 3–4 (D.D.C. 2018) (*quoting Cal. Dep't of Social Servs. v. Leavitt*, 523 F.3d 1025, 1033–34 (9th Cir. 2008)).  This is appropriate when

---

[6] *See also* Colin Decl., Ex. 2, at 4 (Oct. 16, 2020 Mandatory Stand-Up Talk stating that "[l]ate and extra trips and overtime should be used when they would facilitate the expeditious delivery of Election Mail").

7

"significant questions regarding noncompliance [with a court order] have been raised.'" *Id.*; *see also Abdi v. McAleenan*, 2019 WL 1915306, at *3 (W.D.N.Y. Apr. 30, 2019); *Heredia Mons v. Wolf,* 2020 WL 4201596, at *2 (D.D.C. July 22, 2020).

### A. There Is, At a Minimum, a "Significant Question" Regarding Defendants' Noncompliance with the Court's Preliminary Injunctions

Here, the evidence before the Court is, at a minimum, sufficient to raise the question of whether Defendants have complied with the Court's Orders. Defendants readily conceded that they did not believe this Court's preliminary injunctions required them to do anything. They admit, at least as of October 15, that they had not rescinded the very Policy Changes instituted in July 2020 that dramatically curtailed the use of late and extra trips. And their own data shows that at least as of October 3, the most recent available data, they remained far below pre-July levels in terms of on-time mail delivery and the use of late and extra trips. Indeed, USPS's on-time service scores are now 2 percent *lower* than the late August levels that the Court considered in issuing its injunctions, and nearly 10 percent below USPS's performance goals. *See* Ex. C at 1 (most recent scores 86.15% for week of Oct. 3); Ex. K, Suppl. Grimmer Decl. ¶ 3, *Vote Forward*, ECF No. 24-2 ("The September 10th USPS press release asserts that, for the week of August 29th, the Service Score for first-class mail is 88.04%. The postal service described this Service Score as an 'uptick in service performance.'").

It remains, at best, uncertain whether Defendants' belated communications to USPS employees over the past week will actually reverse this fall-off that was precipitated by the July 2020 Policy Changes. *First*, none of the additional guidance has communicated that the Late/Extra Trip Policy is no longer operative. Rather, Defendants' additional guidance documents each "reiterate" the communications that were sent prior to this Court's order. Colin Decl., Ex. 1 (Oct. 13 memorandum); *see also id.,* Ex. 2 (Oct. 16 Stand-Up Talks); Ex. I (Oct. 20

memorandum).  *Second*, though USPS offers some concrete plans for Election Mail, many of these guidelines and plans are not "expected to be executed by local management" until October 26, a mere week before the election.  *See* Ex. I at 2.

> **B.     Defendants Must Immediately Provide Updated, Current
> Data to Allow Plaintiffs and the Court to Assess the Need
> for Further Equitable Relief Before Election Day**

Moreover, the only way for Plaintiffs and the Court to assess whether the recent communications are having any effect on mail delivery timelines is to obtain current data on service scores, late and extra trips, and other mail delivery metrics.  USPS's systems automatically collect information on extra and late trips on a daily basis.  Cintron Dep. Tr. at 24:16-25:21.  Indeed, last Friday, Defendants produced the late and extra trip information for every day the of the prior week up to the day before the production—they just have declined to produce that daily information each day.  *See* Ex. G.  Defendants have the ability to track service scores over three-day intervals.  Ex. C at 1 (reporting service score data in 3-4 day intervals for June 27, July 1, and July 4).  And USPS tracks various data and information specifically related to Election Mail.  *See, e.g.*, Tr. of Deposition of Robert Justin Glass, dated Oct. 16, 2020 (attached as Ex. J), at 166:21-167:7 ("we monitor through the data that we are seeing, but we marry that up against the actual feedback from the ballot monitors that we have. . . and we provide daily feedback on that to our plant managers and division directors"); *id*. at 114:20-117:2 (explaining that USPS will track and receive reports regarding "extraordinary measures"—such as upgrading Election Mail to priority mail express, "delivering ballots on Sunday," and conducting "special deliveries"—during October 26 to November 4).

It is therefore critical that Defendants provide immediate and, going forward, daily data updates for extra and late trip deliveries, and daily (or, at minimum, every three days) updates for on-time delivery scores, so that the Plaintiffs and the Court can evaluate the extent to which

9

additional equitable relief is necessary to ensure that Defendants have fully rescinded the July 2020 Policy Changes and to avoid the irreparable harm that led to the Court's preliminary injunctions in the first place.  Plaintiffs have made multiple attempts in the past week to obtain this data from Defendants.  Defendants have refused to produce it on the grounds that it would be unduly burdensome to provide, but the type of data Plaintiffs seek is consistent with what USPS has shown the ability to generate, as noted above.  Moreover, given Defendants' foot-dragging and their clear failure to reverse the Policy Changes that this Court enjoined, they are in no position to complain about the inconvenience caused by having to produce this data.

Given that there are less than two weeks before Election Day, Plaintiffs request that the Court (1) schedule a hearing for Tuesday, October 27—one week before Election Day—and (2) require Defendants to produced updated, current data regarding mail delivery timelines no later than 12 hours before that hearing, so that Plaintiffs and the Court can assess what further equitable relief is necessary to ensure compliance with the Court's preliminary injunctions. Plaintiffs further request that the Court order Defendants to produce the same data on a daily basis, going forward.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Plaintiffs' Motion to Enforce Preliminary Injunction and enter the attached proposed order.

Dated: Washington, D.C.
October 22, 2020

Respectfully submitted,

BERG & ANDROPHY

 /s/ *David H. Berg*
David H. Berg
(*Admitted pro hac vice*)
Joel M. Androphy
D.D.C. Bar No. 999769
James W. Quinn
(*Admitted pro hac vice*)
Bronwyn M. James
(*Admitted pro hac vice*)
120 West 45th Street, 38th Floor
New York, NY 10036
Tel: (646) 766-0073

*Attorneys for Plaintiffs*

OF COUNSEL:

Kathryn Page Berg
120 West 45th Street, 38th Floor
New York, NY 10036
(*Admitted pro hac vice*)
Tel: (646) 766-0073

## **CERTIFICATE OF SERVICE**

      I certify that, on October 22, 2020, I electronically transmitted the attached motion and accompanying exhibits using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants for this case.


Dated: Washington, D.C.
       October 22, 2020                              _/s David H. Berg_