**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TERESA RICHARDSON, *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>Defendants. | Civil Docket No. 20-cv-2262 (EGS) |

**NOTICE OF DATA IN RESPONSE TO THE COURT'S OCTOBER 27, 2020 ORDER**

Pursuant to the Court's October 27, 2020 and October 30, 2020 orders, Defendants provide the Court with "(1) updated data on the number of extra and late trips performed the preceding day, at the Nation, Area, and District level, including any available data that is specific to Election Mail, to the maximum extent feasible" and (2) "updated on the percentage of on-time deliveries at the Nation, Area, and District level, including any available data that is specific to Election Mail to the maximum extent feasible." Defendants also provide data on the absolute number of Inbound Ballots and Outbound Ballots captured in the Election Mail processing scores data produced pursuant to the Court's October 27, 2020 Order.

Defendants again caution that this data is unreliable and does not reflect accurate service performance reporting for the reasons stated in their opposition to Plaintiffs' motion to enforce and the accompanying Declaration of Arslan Saleem. As explained in Defendants' opposition, this data is not appropriate for evaluating the Postal Service's performance throughout a week, and weekly data is significantly more useful for evaluating the Postal Service's performance across multiple weeks. Accordingly, Defendants maintain that the data possesses little to no

analytical value and should not be considered a reliable indicator of performance. Bearing these limitations in mind, the Postal Service provides herewith the following data.

**1. Extra and Late Trips**

Exhibit 1 contains the most recent reasonably available nationwide data on the number of extra and late trips for all Divisions, Surface Transfer Centers (STCs), and International Service Centers (ISCs). The data reflects extra and late trips from October 1, 2020 to November 1, 2020. Nationwide extra and late trip data is not yet available for November 2, 2020. As noted, the data reflects extra and late trips for Divisions, STCS, and ISCs; the Postal Service does not track this data at the Area and District Level.

**2. On-Time Delivery Percentages**

Exhibit 2 contains the most recent reasonably available daily service performance data on the National, Area, and District levels for First-Class Mail and Marketing Mail beginning October 24, 2020. This data does not produce accurate, reliable information, as it is incomplete, subject to change, and overall, is not an accurate representation of the Postal Service's performance, for several reasons.

First, the data provides information only about the performance of mail within the Postal Service's operational network, *i.e.*, the time between its first and last processing operations, or the "processing score." It does not incorporate the "First Mile," which represents the time from acceptance of the mailpiece (*e.g.*, from a collection box or retail unit) to the first processing operation, or the "Last Mile," which tracks mailpieces from their last processing scan to delivery. "First Mile" and "Last Mile" data are not incorporated because those measurements are derived from a statistically valid system of randomly sampled mail, and the results of the sampling are not available as of the time of this filing. First and Last Mile scores are incorporated into the

longer-term Service Performance scores, but this takes several days to determine, and, as such, it is not possible to include with this filing.

Second, as noted in the Declaration of Arslan Saleem, "the Postal Service has observed that individual days during the week tend to exhibit unique and differential service performance patterns that would be misleading and unhelpful when taken out of a longer-term service picture; Sundays, in particular (on which mail is not delivered), tend to distort service scores early in the following week. As such, Mondays typically have a greater volume of mail, and correspondingly lower service scores." Saleem Dec. ¶ 8. Accordingly, the data provided herein does not reflect actual service performance.

Third, the data provided here is not complete, as full information is not available at the time of this filing. As explained in Mr. Saleem's declaration, daily scores do not provide an accurate depiction of what ultimate scores for that day will be, as the scores can shift for a variety of reasons. *See id.* ¶¶ 5–6. For example, if a piece was scheduled to be delivered on Wednesday but was actually delivered on Friday, that delay would not be apparent from the Wednesday daily data and would only be incorporated into the Postal Service's data after it was delivered on Friday. *Id.* ¶ 5. The data could also change for other reasons, including additional scans received due to a change of address. *Id.* ¶ 6. As such, this data is subject to change with each updated daily report.

Exhibit 3 contains data pertaining to three subsets of Election Mail: (1) mailpieces that are electronically identified on "entry" as Election Mail and that are also trackable using the Postal Service's Intelligent Mail Barcode (IMB) feature; (2) Election Mail that bears service type ID (STID) codes embedded within the IMB specifically identifying the Mail as ballots outgoing to voters; and (3) Election Mail that bears STID codes that specifically identify the Mail as

ballots from incoming voters. The Postal Service again cautions, however, that this data does not provide a representatively accurate measurement of Election Mail service performance because only a subset of Election Mail is sent using IMBs and ballot-specific STID codes. In addition, each of the Election Mail service figures tracks the performance of Election Mail within the Postal Service's operational network, which is the mailpiece's time between its first and last processing operations. As with the data provided in Exhibit 2, these service performance figures do not incorporate the "First Mile" or "Last Mile." Moreover, when broken down on the Area or District level, the volume of data is too small to be statistically valid in many instances. Finally, as part of the extraordinary measures the Postal Service committed to undertake leading up to the election, many facilities have arranged for "local turnaround," meaning that ballots stay in the delivery unit (*i.e.*, when a voter drops off a ballot, the ballot is postmarked and then provided to the board of elections), as opposed to being sent to mail processing. Local turnaround expedites delivery, but is not captured in service performance data. Bearing these limitations in mind, the Postal Service provides, herewith, processing scores for the three subsets of Election Mail described above. The data now includes information at the National, Area, and District Levels.

**3. Volume Data**

Exhibit 4 contains data on the absolute number of Inbound Ballots and Outbound Ballots captured in the Election Mail processing scores data produced pursuant to this Court's October 27, 2020 Order. This data is subject to the same limitations identified above.

* * *

The Postal Service considers all of the service performance data filed today to be commercially sensitive and not subject to public disclosure under 39 U.S.C. § 410(c). Because the service performance information is incomplete, subject to change, not representatively

accurate, and potentially misleading or confusing, it would not be released under good business practices. With respect to the daily service performance data generally, the Postal Service considers this to be commercially sensitive in that it is not consistent with its approved service performance rules and inconsistent with the methodology used in developing the data that the Postal Service discloses publicly. With respect to the Election Mail service performance data specifically, because the Postal Service is only able to measure a subset of Election Mail, the service performance scores are not representatively accurate measurements of the service performance of all Election Mail handled by the Postal Service. The data is also a subset of First-Class Mail and Marketing Mail data that is more disaggregated than is otherwise publicly shared. Nor does the Postal Service otherwise report on a combination of a subset of First-Class Mail and Marketing Mail in this manner in other contexts. As such, this information is commercially sensitive in nature and would not be disclosed under good business practices. USPS is providing the information pursuant to the Court's Order, but reserves the right to assert the confidential nature of this information in other contexts.

Dated: November 3, 2020

Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

ERIC R. WOMACK
Assistant Director, Federal Programs Branch

/s/ John Robinson
JOSEPH E. BORSON
KUNTAL CHOLERA
ALEXIS ECHOLS
DENA M. ROTH
JOHN ROBINSON (D.C. Bar No. 1044072)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L. Street, NW
Washington D.C. 20005
(202) 616-8489
john.j.robinson@usdoj.gov

*Attorneys for Defendants*