UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

**Richardson, et al.**

Plaintiffs,

v.

**Trump, et al.**

Defendants.

Case No. 20-cv-2262

**DEFENDANTS' FURTHER RESPONSE TO
THIS COURT'S NOVEMBER 3, 2020 ORDER**

Defendants respectfully provide the following further response to this Court's November 3, 2020 Order. At the outset, Defendants reiterate that they take their compliance with the orders of this Court extremely seriously. As this Court is aware, throughout this case and the related cases, Defendants have undertaken significant efforts to comply with this Court's orders. As explained below, after this Court issued its November 3, 2020 Order, Defendants undertook further efforts to comply with the Court's Order to the best of their ability.

On November 3, 2020, the Postal Inspection Service conducted inspections in the 220 mail processing facilities across the country that handle Election Mail, including the relevant processing facilities in the specific postal districts identified in this Court's November 3, 202 order. Among other things, they searched holding and non-holding areas for Election Mail, scanned for delayed mail, and ensured that Election Mail was processed expeditiously. Any deficiencies were identified and reported to management for resolution. Throughout the day and into the evening, processing plants, including those in the postal districts required by this Court's order, were also

1

conducting regular "sweeps" for any remaining ballots, so that they could be expeditiously processed and directed to their final destination. Indeed, after a conversation with counsel for the Plaintiffs, Defendants sent a further email to all processing plants yesterday evening reminding them of this responsibility.

Defendants therefore conducted inspections by Postal Inspectors and sweeps at the relevant plants yesterday, pursuant to this Court's order, but it was not possible for the Postal Inspectors to conduct sweeps of all relevant facilities by this Court's 3pm deadline. Inspectors were not physically on site at the time of the Court's order, because they had been scheduled to arrive later in the day, to conduct inspections at the most critical time when the vast majority of any ballots processed on Election Day would be on site, and even if they were, Inspectors are not equipped to do full operational sweeps in the time allotted, although they do and did conduct their own sweeps as part of their reviews. We explain why below and further demonstrate how Defendants effectively accomplished the goal underlying the Court's order.

**I.    The Postal Inspection Service conducted daily reviews of mail processing facilities handling Election Mail, but it was not possible to change the nature or timing of this review in the limited time available.**

The Postal Inspection Service has conducted daily reviews, called Observation of Mail Conditions ("OMCs") of 220 mail-processing facilities handling Election Mail for the past several days, including yesterday. Brubaker Dec. ¶ 6. Typically, one (and sometimes two) Inspectors are assigned to each facility. *Id.* These facilities are very large, and Inspectors are instructed to walk throughout the facility and observe the conditions of Election Mail, chiefly ballots, processed and handled by employees. *Id.* They are directed to consider specific things, including reviewing staging areas and areas outside the staging area for Election Mail, scanning for delayed mail, ensuring Election Mail is processed expeditiously, and ensuring no ballots are held for postage

due.  *Id.*  The purpose of the review is to do everything possible to ensure that ballots are delivered timely; and any deficiencies are identified and reported to management for prompt resolution.  *Id.*

That process occurred yesterday.  For the twelve districts identified in this Court's order, the following matters were discovered related to ballots: (a) in Johnstown, PA, three delayed ballots were discovered and were being expedited by management for delivery, and (b) in Lancaster, PA, ten ballots were discovered from collectors and referred to management for delivery.  *Id.*¶ 10.

It was not, however, possible, to have Inspectors on site in the specific districts identified in the Court's order to conduct and complete sweeps between 12:30 and 3pm.  There are two main reasons why this was so.  *First*, the schedule for Postal Inspection Service's daily reviews is set in advance, and Inspectors were scheduled to be at their processing plant from 4pm to 8pm on Election Day, because the bulk of the mail from delivery units arrived at or after that time, and processing begins thereafter.  *See id.* ¶ 7; *see also* Bray Dec. ¶ 8.  In other words, the vast majority of ballots processed in plants on Election Day would be processed between 4pm and close of polls, and the management suggested that time for the Inspection Service so that they would be present to observe compliance with postal operational efforts to postmark and deliver ballots to the Boards of Election by the respective deadlines.  Bray Dec. ¶ 8.  Accordingly, Inspectors were instructed to pay attention to specific postmarking or ballot-in-hand deadlines for each state, which impact the processing of Election Mail on Election Day.  Brubaker Dec. ¶ 7,

At the time the Court's order was issued at 12:30pm, it was not practicable to move OMCs earlier in the day due to logistical considerations.  Brubaker Dec. ¶ 8.  The Inspectors were not in the facilities; as Election Mail reviews are not a normal duty, and Inspectors were assigned to conduct them for a particular period of time.  *Id.*  Before the OMC was to begin at 4pm, they were

3

conducting their normal duties related to their assigned team (e.g., mail theft, mail fraud, dangerous mail responses, etc.).  *Id.*  When the Court order was issued, there was not enough time to contact them, to have them travel to the processing facilities, and to assign new duties to them at the facilities.  *Id.*  Notably, some of the duties they were undertaking elsewhere included election matters unrelated to OMCs.  *Id.*

*Second*, the term "sweep" is used in multiple contexts by the Postal Service.  *Id.* ¶ 9.  As has generally been discussed in this litigation, it is an operational term that means that employees examine every place in the plant to make sure no ballots have been left behind pursuant to a specific plan.  These sweeps involve approximately one to five employees, depending on the size of the facility.  It is not possible for Inspectors to conduct this type of sweep in the time allotted, however, Inspectors did observe these sweeps in addition to their own efforts, and reported any deficiencies to facility management.  *Id.*  Inspectors also conducted their own "sweeps" of facilities as part of the OMC, where they search equipment, trailers, recyclable dumpsters, staging areas, empty equipment areas, bathrooms, breakrooms, locker rooms, stock rooms, offices, closets, etc.  *Id.*

## II.     The Postal Service conducted regular sweeps at all plants on Election Day.

The Postal Service did, however, conduct regular sweeps at all its plants on Election Day, as part of a longstanding review process in place to ensure that no ballots are left behind.  "Sweep" is the term used when Postal Employees search plants to be sure that all ballots are accounted for and being processed correctly.  Brady Dec. ¶ 3.  "This includes searching the facility to be sure no ballots are in any unexpected locations . . . as well as identifying ballots in the mailstream that are not moving with sufficient speed."  *Id.*  The search is not limited to the interior of the plant and encompasses the surrounding area, including the docks and any trailers that might contain mail.  *Id.*  During the last days of the election, when all ballots must be dispatched from plants under the

extraordinary measures undertaken by the Postal Service, all ballots retrieved during sweeps are expedited through whatever means are necessary to ensure they are delivered in time to be counted, assuming that it is physically possible. *Id.* ¶ 4. While some states allow ballots to be counted after Election Day, the Postal Service, through Election Day, treats all ballots as if they must be delivered by the close of polls. *Id.* ¶ 4.

Sweeps have generally been taking place daily since January. *Id.* ¶ 6. Plants are required to submit an "all clear" report, indicating that it has searched for ballots and either none were identified, or that any identified were moved expeditiously when found. *Id.* This report is submitted at 10am each day. *Id.* For November 3rd, in addition to the 10am "all clear," all plants were also instructed to continuously sweep the plants for ballots starting at 7am (when the new shift starts) and continuing as long as the state Boards of Elections (BOEs) continue to accept mail. *Id.* ¶ 7. All plant staff are on high alert to find any ballots that may not be in the proper place. Any ballots identified in these sweeps were to be moved to the BOEs as quickly as necessary to be counted outside of the Postal Service's usual transportation network. *Id.* This includes arrangements with some BOEs who make plans to come to the plants to pick up ballots themselves. *Id.; see also* Hr'g Tr. of Michael Barber, Oct. 31, 2020, at 15:13-19 ("Tuesday, we will have hourly sweeps then from most mails coming in all the way up until – each individual state's Board of Election have a slightly different receipt times. So we provided all of that information to every postal facility across the country and they will make continuous sweeps up until those times of the Board of Elections still continue to accept."). On Election Day, this plan was executed, and the sweeps were carried out. Bray Dec. ¶ 7. At the request of Plaintiffs' counsel, and consistent with these processes, the Postal Service sent the attached email to all Plant Managers last night emphasizing that plants must "continu[e] to do regular sweeps to ensure that all ballots can be

timely delivered in accordance with the state's Election Day ballot deadline **today**" and that "[a]ll plants must ensure that we provide a final clean sweep for all Election Mail Ballots for deliveries **today** in all states for which you provide service." (emphasis original). *See id.*¶ 9.

The Postal Service has confirmed with the plant maangers that sweeps were carried out as instructed yesterday in plants located in the Central Pennsylvania, Philadelphia, Detroit, Colorado/Wyoming, Atlanta, Houston, Alabama, Northern New England, Greater South Carolina, South Florida, Lakeland, and Arizona districts.  Bray Dec. ¶¶ 10-22.

**CONCLUSION**:

As discussed above, the Inspection Service was not able to conduct specific sweeps at specific times of the day, as this was not operationally possible to implement in the limited time available for the reasons stated above.  Our understanding at the hearing was that the Court did not intend for the Postal Service to make operational changes on Election Day, but rather to confirm that the existing processes were functioning as anticipated.  Defendants conducted ongoing sweeps of the plants in the relevant districts throughout the day to identify any ballots and expedite them to BOEs, and the Inspection Service conducted its thorough observational process during Election Day, at which point it identified only a handful of ballots.  Defendants therefore respectfully indicate that they have provided assurance that the relevant plants had sufficient oversight on Election Day to ensure that ballots were expedited as quickly as possible.

Dated:  November 4, 2020

Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

ERIC WOMACK
Assistant Branch Director
Federal Programs Branch

*/s/ Kuntal Cholera*
JOSEPH BORSON (VA Bar No. 85519)
KUNTAL V. CHOLERA
ALEXIS ECHOLS
DENA ROTH
JOHN J. ROBINSON
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Telephone: (202) 514-1944
E-mail: Joseph.Borson@usdoj.gov

*Attorneys for Defendants*