## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

TERESA RICHARDSON, *et al.*,

               Plaintiffs,

    v.

DONALD J. TRUMP, *et al.*,

               Defendants.

Civil Docket No. 20-cv-2262 (EGS)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT AS MOOT OR, IN THE ALTERNATIVE, TO DISSOLVE THE PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ........................................................................................................................... 1

A.     Plaintiffs Filed Suit to Protect Their Right to Vote in the November Election .................. 1

B.     Plaintiffs Vote in the November Election ......................................................................... 3

LEGAL STANDARD .................................................................................................................... 4

ARGUMENT ................................................................................................................................. 4

I.     THE COURT LACKS JURISDICTION BECAUSE THIS CASE IS MOOT ................. 4

II.    THE POSTAL SERVICE HAS FULLY COMPLIED WITH THE COURT'S
       PRELIMINARY INJUNCTION ORDER, AND, IN ANY EVENT, ANY
       ALLEGED NONCOMPLIANCE CANNOT GIVE RISE TO A CASE OR
       CONTROVERSY THAT DOES NOT OTHERWISE EXIST ...................................... 10

III.   IN THE ALTERNATIVE, THE COURT SHOULD DISSOLVE THE
       PRELIMINARY INJUNCTION .................................................................................. 11

CONCLUSION ............................................................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**

*Am. Fed'n of Gov't Emps. v. Rivlin*,
   995 F. Supp. 165 (D.D.C. 1998) ........................................................................................ 9

*Am. Freedom Def. Initiative v. Metro. Transp. Auth.*,
   109 F. Supp. 3d 626 (S.D.N.Y. 2015) ............................................................................ 11

*Arizonans for Official English Language v. Arizona*,
   520 U.S. 43 (1997) ........................................................................................................... 4

*Burniac v. Wells Fargo Bank, N.A.*,
   810 F.3d 429 (6th Cir. 2016) .......................................................................................... 12

*Chamber of Commerce of U.S. v. EPA*,
   642 F.3d 192 (D.C. Cir. 2011) ..................................................................................... 5, 8

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ......................................................................................................... 7

*Cooter & Gell v. Hartmarx Corp.*,
   496 U.S. 384 (1990) ....................................................................................................... 11

*CTIA-The Wireless Ass'n v. FCC*,
   530 F.3d 984 (D.C. Cir. 2008) ........................................................................................ 8

*Cypress Barn, Inc. v. W. Elec. Co.*,
   812 F.2d 1363 (11th Cir. 1987) ..................................................................................... 11

*Doe 2 v. Shanahan*,
   755 F. App'x 19 (D.C. Cir. 2019) .................................................................................. 12

*Dist. 50, United Mine Workers of Am. v. Int'l Union, United Mine Workers of Am.*,
   412 F.2d 165 (D.C. Cir. 1969) ....................................................................................... 11

*Fleming v. Gutierrez*,
   785 F.3d 442 (10th Cir. 2015) ..................................................................................... 6, 7

*Freedom Party of N.Y. v. N.Y. Bd. of Elections*,
   77 F.3d 660 (2d Cir. 1996) .......................................................................................... 6, 7

*Fund for Animals v. Mainella*,
   335 F. Supp. 2d 19 (D.D.C. 2004) ................................................................................ 10

*Genesis Healthcare Corp. v. Symczyk*,
   569 U.S. 66 (2013) ........................................................................................................... 4

*Hall v. Beals*,
   396 U.S. 45 (1969) ................................................................................................ 6, 7

*Horne v. Flores*,
   557 U.S. 433 (2009) ................................................................................................. 12

*Kingman Park Civic Ass'n v. Gray*,
   27 F. Supp. 3d 142 (D.D.C. 2014) ............................................................................ 7

*In re LeFande*,
   919 F.3d 554 (D.C. Cir. 2019) .................................................................................. 4

*Lewis v. Continental Bank Corp.*,
   494 U.S. 472 (1990) .................................................................................................. 5

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555) (1992) ................................................................................................. 5

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
   538 U.S. 803 (2003) .................................................................................................. 8

*Norton v. S. Utah Wilderness, All.*,
   542 U.S. 55 (2004) .................................................................................................... 8

*People for the Ethical Treatment of Animals, Inc. v. U.S. Fish &*
   *Wildlife Serv.*,
   59 F. Supp. 3d 91 (D.D.C. 2014) .............................................................................. 5

*Preiser v. Newkirk*,
   422 U.S. 395 (1975) .................................................................................................. 5

*Pub. Citizen Health Research Grp. v. Pizzella*,
   No. CV 18-1729 (TJK), 2019 WL 4711457 (D.D.C. Sept. 26, 2019) ...................... 9

*Richardson v. Trump*,
   No. CV 20-2262 (EGS), 2020 WL 5969270 (D.D.C. Oct. 8, 2020) .................. 1, 2, 3

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) .......................................................................................... 5, 6

*United States v. Sanchez-Gomez*,
   138 S. Ct. 1532 (2018) .............................................................................................. 9

*Venezia v. Robinson*,
   16 F.3d 209, 211 (7th Cir. 1994) .............................................................................. 11

**Other Authorities**

11A Charles Alan Wright, Arthur R. Miller & Mary K. Kane,
    *Federal Practice and Procedure* § 2947 (Oct. 2020 update).................................................. 11

## INTRODUCTION

Plaintiffs—four individual voters living in Texas, Pennsylvania, New York, and Indiana—brought this case to redress a specific injury: potential "disenfranchisement in the November 2020 election." *Richardson v. Trump*, No. CV 20-2262 (EGS), 2020 WL 5969270, at *7 (D.D.C. Oct. 8, 2020). Plaintiffs have now confirmed that they each voted in the 2020 election, and they do not allege that there are any runoff elections in the states in which they voted that would provide them with an opportunity to cast an additional vote. This case is therefore undisputably moot: Plaintiffs can no longer assert any ongoing injury related to the November 2020 election that is traceable to Defendants' conduct or that could be redressed by a decision from this Court. Accordingly, the Court should dismiss Plaintiffs' complaint for lack of subject-matter jurisdiction under Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3) and dissolve the preliminary injunction. Alternatively, should this Court deny the motion to dismiss, it should still dissolve the preliminary injunction due to the absence of any continuing likelihood of irreparable harm to the Plaintiffs.

## BACKGROUND

### A.    Plaintiffs Filed Suit to Protect Their Right to Vote in the November Election

On August 17, 2020, Plaintiffs filed their complaint against President Donald J. Trump, Postmaster General Louis DeJoy, and the United States Postal Service, alleging that certain alleged Postal Service policy changes had resulted in mail delays that prevented Plaintiffs from voting by mail in their states' primary elections. Compl. ¶ 11. Plaintiffs alleged that, if these policy changes were not enjoined going forward, Plaintiffs would be injured because they would not be able to vote by mail in the November general election. *Id.* ¶ 10. Specifically, Plaintiffs alleged that injunctive relief was necessary to "protect the Plaintiffs' right to vote by ensuring

that the United States Postal Service delivers absentee and mail-in ballots in a timely fashion to them and then[] delivers their executed ballots to election officials in time to be counted." *Id.*

Plaintiffs originally brought three claims to protect against these purported harms: (i) violation of the right to vote guaranteed under the Fourteenth Amendment, (ii) conspiracy to violate Plaintiffs' right to vote, and (iii) violation of the Administrative Procedure Act. *Id.* ¶¶ 97–112. On September 11, 2020, Plaintiffs amended their complaint to add certain factual allegations and replace their APA claim with a claim that the Postal Service acted *ultra vires*. Am. Compl. ¶¶ 63–160, 193–221. Plaintiffs' alleged injury, however, did not change; they continued to assert only a potential inability to vote by mail in the then-upcoming general election. *See, e.g.*, *id.* ¶¶ 10–11.

Shortly after filing their complaint, Plaintiffs moved for a preliminary injunction, seeking to enjoin four separate, alleged Postal Service policy changes. *See* ECF. No. 14. In support of that motion, Plaintiffs argued that they had standing because "if Defendants' conduct is not enjoined, [Plaintiffs] will almost certainly be deprived of the right to vote in the general election." ECF No. 57, at 11. They argued that their alleged injury could be redressed because enjoining the alleged policy changes would "allow[] USPS to deliver mail-in ballots without the delays and delivery failures that have plagued this election season." *Id.* Plaintiffs did not identify any other alleged injury in their motion.

On October 8, 2020, the Court granted in part and denied in part Plaintiffs' motion for a preliminary injunction. *Richardson*, 2020 WL 5969270, at *15–16. In concluding that Plaintiffs had standing to bring their claims, the Court noted that Plaintiffs "exclusively seek prospective injunctive relief" to prevent "disenfranchisement in the November 2020 election." *Id.* at *7. The Court concluded that (i) Plaintiffs had provided evidence showing that changes in Postal Service

policy had caused mail delays, and (ii) the changes were continuing to have nationwide effects that could affect Plaintiffs' ability to vote by mail in the November 2020 election. *Id.* at *7–8. The Court's conclusion that Plaintiffs had standing rested solely on Plaintiffs' alleged harm in not being able to vote in the November election—Plaintiffs never identified any other injury that could give rise to an Article III injury.

In addressing the scope of Plaintiffs' requested injunction, the Court, consistent with Article III's limitations, appropriately narrowed the requested injunction to apply only to those policies that the Court found were likely to cause Plaintiffs harm in the November election. *Id.* at *15. Those alleged policies included an alleged reduction in overtime pay and an alleged ban on "late" or "extra" trips. *Id.* The Court, however, declined to issue a preliminary injunction as to other alleged policies—such as removing certain sorting machines and collection boxes— because Plaintiffs "submitted little to no evidence" connecting these policies to Plaintiffs' alleged injury of not being able to vote by mail in the November election. *See id.*

**B.      Plaintiffs Vote in the November Election**

After the November 3, 2020 election, counsel for Defendants contacted counsel for Plaintiffs to inquire as to whether Plaintiffs had requested, received, and returned mail-in ballots for the November 3, 2020 election. *See* ECF No. 132-1, Email from K. Cholera to D. Berg (Nov. 10, 2020). Plaintiffs' counsel confirmed that Plaintiffs "did vote in the presidential election." *Id.* In response to Defendants' counsel's suggestion that the case was therefore moot, Plaintiffs' counsel responded that the case was not moot because "President Trump has refused to concede the election, is contesting the legitimacy of mail-in ballots, and continues to file suits contesting the validity of the general election." *Id.*

On November 16, 2020, the parties filed a joint proposal for further proceedings in which they further addressed the issue of mootness. Joint Proposal, ECF. No. 131. Plaintiffs again did

not dispute that they voted in the November election (nor, specifically, did they dispute that they were able to vote by mail). But Plaintiffs repeated their argument that their claims were not moot because the President had not yet conceded the election and that the President's campaign had filed election-related lawsuits in various states. *Id.* at 2–3. Plaintiffs also stated that they intended to seek a permanent injunction prohibiting the Postal Service "from enforcing the Late/Extra Trips Policy and from limiting or eliminating the use of overtime to deliver Election Mail" in future elections, including "the 2024 federal elections." *Id.* at 10. And Plaintiffs argued that "[e]ven if Plaintiffs' claims are otherwise moot," the case may proceed to address Defendants' compliance with the Court's preliminary injunction order. *Id.* at 10.

## LEGAL STANDARD

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). When reviewing a Rule 12(b)(1) motion to dismiss, "the court must accept the complaint's well-pled factual allegations as true and draw all reasonable inference in the plaintiffs favor." *In re LeFande*, 919 F.3d 554, 561 (D.C. Cir. 2019). "At the same time, the court is not required, however, to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations." *Id.* In determining whether jurisdiction exists, "a court may look beyond the allegations of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the conflicting evidence." *Id.*

## ARGUMENT

## I.   THE COURT LACKS JURISDICTION BECAUSE THIS CASE IS MOOT

The Court should dismiss Plaintiffs' complaint because this case is moot. "An actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71–72 (2013) (quoting *Arizonans for Official English Language v. Arizona*, 520 U.S. 43, 67 (1997)). "If an intervening circumstance deprives

4

the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Id.* (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–78 (1990)). Thus, "[i]t is not enough that the initial requirements of standing and ripeness have been satisfied; the suit must remain alive throughout the course of litigation, to the moment of final appellate disposition." *People for the Ethical Treatment of Animals, Inc. ("PETA") v. U.S. Fish & Wildlife Serv.*, 59 F. Supp. 3d 91, 95 (D.D.C. 2014); *see also Chamber of Commerce of U.S. v. EPA*, 642 F.3d 192, 199 (D.C. Cir. 2011) ("[E]ven where litigation poses a live controversy when filed," the Court "must dismiss a case as moot if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future."). This doctrine of mootness "reflect[s] and enforce[s]" Article III's limitation of federal jurisdiction to "cases and controversies" under which "federal courts are without authority 'to render advisory opinions or to decide questions that cannot affect the rights of litigants in the case before them.'" *Chamber of Commerce*, 642 F.3d at 199 (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)).

Under a straightforward application of these principles, this case is moot. Because the November election has passed, Plaintiffs can no longer satisfy any of the requirements of Article III standing. Plaintiffs cannot establish any injury that is "actual or imminent." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560) (1992). Plaintiffs sought prospective relief based solely on an alleged injury of a potential inability to vote by mail in the November 2020 election. But the opportunity to vote in that election has come and gone. Accordingly, whether or not Plaintiffs had voted, there would be no relief this Court could provide that could redress allegations of harm related to the November elections. And Plaintiffs have now indicated that they did, in fact, vote in the election. They

cannot now seek prospective relief based on an alleged inability to vote in an election that has

already concluded, let alone in an election where the alleged potential injury never in fact

materialized.

Nor can Plaintiffs establish the elements of causation or redressability. *See Spokeo*, 136

S. Ct. at 1548. Plaintiffs cannot show that they will suffer any injury traceable to the challenged

conduct of Defendants (because they cannot show that they will suffer any injury at all), or that

any injury could be redressed by a favorable judicial decision. Indeed, precisely because claims

such as Plaintiffs' are not redressable after an election, numerous courts have dismissed such

claims as moot after the election at issue has taken place. *See e.g.*, *Hall v. Beals*, 396 U.S. 45, 48

(1969) (case challenging state residency requirement to vote in 1968 election was moot after the

election because it was "impossible to grant [plaintiffs] the relief they sought in the District

Court"); *Fleming v. Gutierrez*, 785 F.3d 442, 445 (10th Cir. 2015) (challenge to election

procedures was moot after election "because the election has passed and [the court] cannot grant

any effective relief"); *Freedom Party of N.Y. v. N.Y. Bd. of Elections*, 77 F.3d 660, 662 (2d Cir.

1996) ("After the special election was held, the controversy became moot.").

Plaintiffs offer no legal basis for their contention that the Court may nonetheless

continue to exercise jurisdiction over this case. While Plaintiffs argue that the President has not

conceded and there remain election-related lawsuits or even runoff elections in some states, those

arguments have nothing to do with the individual Plaintiffs, their alleged injuries, or their claims

in this case. As a fundamental, threshold matter, the injury asserted by all of the Plaintiffs in this

case, and the claims and resulting requests for relief they asserted, are exclusively related to the

actions of the Postal Service, and the potential effect on Plaintiffs' right to vote by mail. But

none of the states in which Plaintiffs vote have any remaining runoff elections in which Plaintiffs

6

could potentially cast a vote, let alone a vote by mail.[1] As such, the Postal Service's actions with respect to the mail could have no remaining effect on their right to vote in the November election.

What Plaintiffs appear to now argue (although not alleged in the Complaint, as would be required to preclude dismissal, *see Kingman Park Civic Ass'n v. Gray*, 27 F. Supp. 3d 142, 168 (D.D.C. 2014)), is that their vote may somehow be affected by the remaining disputes over the election. But even if Plaintiffs believe that these issues give them the basis for another potential lawsuit, they have nothing to do with the present case. The Postal Service does not certify the outcome of elections, and its policies with respect to the mail have no potential effect on that process.

Plaintiffs note the obvious point that there will be future elections in their states, and say that they intend to seek a permanent injunction prohibiting the Postal Service "from enforcing the Late/Extra Trips Policy and from limiting or eliminating the use of overtime to deliver Election Mail" in future elections, including "the 2024 federal elections." *Id.* at 10. In other words, Plaintiffs in effect suggest that no dispute over the ability to vote in an election could *ever* be moot, because the United States is a democracy that continually provides its citizens with a right to vote. But that is, of course, not the law. *See, e.g.*, *Hall*, 396 U.S. at 48; *Fleming*, 785 F.3d at 445; *Freedom Party of N.Y.*, 77 F.3d at 662.

As this Court is well aware, because Plaintiffs only seek prospective relief, they must show that an alleged injury that requires redress is "certainly pending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). "Allegations of possible future injury are not sufficient." *Id.*; *see*

---

[1] Defendants do not concede that the existence of a runoff election in one of the relevant states would create a live case or controversy. But the absence of any such runoff elections removes any doubt that Plaintiffs' claims are moot.

*also Chamber of Commerce*, 642 F.3d at 200 ("[A]ny petitioner alleging only future injuries confronts a significantly more rigorous burden to establish standing," the "petitioners must demonstrate that the alleged future injury is 'imminent,'" and "must show that there is a 'substantial . . . probability' of injury."). Here, the future elections as to which Plaintiffs seek relief are four years away, and the material facts that would underlie any future challenge are therefore unknown and purely speculative. They include, among others, where Plaintiffs will reside, whether Plaintiffs will intend to vote (and if so, whether in person or by mail), and whether their States of residence will provide the ability to vote by mail. For exactly this reason, courts do not issue permanent injunctions specifically tied to unripe, hypothetical actions that will occur in four years; instead they issue injunctions to prohibit specific and imminent alleged unlawful conduct by an agency, which is precisely what Plaintiffs asked for—and received— here. *See, e.g.*, *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807 (2003); *CTIA-The Wireless Ass'n v. FCC*, 530 F.3d 984, 987 (D.C. Cir. 2008). Indeed, were this Court to issue an injunction prohibiting the Postal Service from making any changes to its policies relating to late or extra trips for the next *four years*, it is difficult to see how such an injunction would not violate, in addition to these fundamental jurisdictional precepts, the Supreme Court's admonition against federal courts serving as the general overseer of the activities of a federal agency. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 66 (2004) (federal courts are not empowered to "enter general orders compelling compliance with broad statutory mandates," lest the court inject itself into "day-to-day agency management").[2]

---

[2] Following the issuance of any hypothetical permanent injunction against the agency, the Postal Service retains the authority to fashion its policies to comply with any adverse judgment, including potentially submitting planned changes in the nature of postal services that will generally affect service on a nationwide basis to the Postal Regulatory Commission.

Nor does this case fit into the limited exception to mootness for a controversy that is "capable of repetition, yet evading review." *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1540 (2018). "A dispute qualifies for that exception only if '(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again.'" *Id.* (citation omitted). Neither requirement is satisfied here. There is no reason to believe any future Postal Service policy changes would evade review. If Plaintiffs believe that such future changes would impinge their right to vote in later elections, Plaintiffs may challenge those policies at that time, just as they challenged the policies at issue here in time for the Court to grant relief before the November election.

Nor is there a "reasonable expectation that the same complaining party will be subjected to the same action again," as it is far too speculative to predict not only what the Postal Service's policies will be at the time of future elections, but how those policies could potentially affect Plaintiffs, especially considering that this year's election took place during an unprecedented pandemic that resulted in millions of Americans voting by mail. *See, e.g. Am. Fed'n of Gov't Emps. v. Rivlin*, 995 F. Supp. 165, 166 (D.D.C. 1998) (Sullivan, J.) (challenge to whether President could require federal employees to work without compensation during budgetary impasse was rendered moot by passage of budget; case did not fall under the "capable of repetition, but evading review" exception because it was "entirely speculative for th[e] Court to predict if, and when, another lapse in appropriations may occur, . . . which employees might be affected, and whether employees will be required to work without compensation"), *aff'd*, No. 98-5045, 1998 WL 545417 (D.C. Cir. July 15, 1998); *see also Pub. Citizen Health Research Grp. v. Pizzella*, No. CV 18-1729 (TJK), 2019 WL 4711457, at *5 & n.4 (D.D.C. Sept. 26, 2019) (case

did not fall under exception to mootness because there was no "non-speculative threat" that agency would take the same action in the future); *Fund for Animals v. Mainella*, 335 F. Supp. 2d 19, 24 (D.D.C. 2004) (same). Accordingly, there is no reason why the Court should not dismiss this case as moot.

**II.   THE POSTAL SERVICE HAS FULLY COMPLIED WITH THE COURT'S PRELIMINARY INJUNCTION ORDER, AND, IN ANY EVENT, ANY ALLEGED NONCOMPLIANCE CANNOT GIVE RISE TO A CASE OR CONTROVERSY THAT DOES NOT OTHERWISE EXIST**

In the parties' joint proposal for further proceedings, Plaintiffs also assert that the Postal Service has not complied with the Court's preliminary injunction order and request "an order compelling Defendant DeJoy to appear on a date certain in this Court . . . and . . . show cause why he should not be held in contempt for failing to immediately and fully implement" the Court's order. Joint Proposal at 5–10. As an initial matter, Plaintiffs have no basis to continue to assert noncompliance with the orders of this Court, as Defendants have explained. *See* Defs.' Opp. to Pls.' Mot. to Enforce 6–13, ECF No. 69.[3] Nor is there any basis to compel testimony from the Postmaster General. *See* Joint Proposal at 14–17.

But even if Plaintiffs could show that the Postal Service violated the Court's order in some way (which they cannot), this would not create a "case or controversy" that does not otherwise exist. Indeed, Plaintiffs do not appear to argue otherwise. Instead, Plaintiffs argue only that "*[e]ven if [Plaintiffs'] claims are otherwise moot*, Defendants may still be held in contempt for their failure to comply with the preliminary injunctions and other lawful Orders issued by this Court." Joint Proposal at 10 (emphasis added).

---

[3] Even Plaintiffs do not appear to assert that there is any continued noncompliance that requires additional orders from this Court to protect against potential future harms. Nor could they, as they have already cast their votes.

The Supreme Court has made clear, however, that a contempt proceeding is a "separate and independent proceeding at law that is not part of the original action." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990). "It is well established that a federal court may consider collateral issues"—such as contempt—"after an action is no longer pending." *Id.* Thus, a court can "make an adjudication of contempt and impose a contempt sanction ever after the action in which the contempt arose has been terminated." *Id.* Accordingly, even if there were a basis for Plaintiffs' assertion that the Postal Service has not complied with the Court's preliminary injunction order (which there is not), this would not create a "case or controversy" that would permit Plaintiffs to maintain their suit, other than for the collateral purpose of pursuing contempt. Thus, Plaintiffs have provided no reason why their complaint should not be dismissed as moot.

## III.   IN THE ALTERNATIVE, THE COURT SHOULD DISSOLVE THE PRELIMINARY INJUNCTION

Because the case is moot, the Court should also dissolve the preliminary injunction. *See, e.g.*, *Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 109 F. Supp. 3d 626, 635 (S.D.N.Y. 2015) (dissolving preliminary injunction because plaintiffs' claims were moot), *aff'd*, 815 F.3d 105 (2d Cir. 2016). A preliminary injunction "preserve[s] the status quo pending the outcome of litigation." *Dist. 50, United Mine Workers of Am. v. Int'l Union, United Mine Workers of Am.*, 412 F.2d 165, 168 (D.C. Cir. 1969). Thus, dismissal of a complaint extinguishes a preliminary injunction. *See, e.g.*, *Venezia v. Robinson*, 16 F.3d 209, 211 (7th Cir. 1994) ("A preliminary injunction cannot survive the dismissal of a complaint."); *Cypress Barn, Inc. v. W. Elec. Co.*, 812 F.2d 1363, 1364 (11th Cir.1987) ("Since a preliminary injunction is interlocutory in nature, it cannot survive a final order of dismissal."); 11A Charles Alan Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 2947 (Oct. 2020 update) ("A preliminary injunction

remains in effect until a final judgment is rendered or the complaint is dismissed."); *see also Burniac v. Wells Fargo Bank, N.A.*, 810 F.3d 429, 435 (6th Cir. 2016) (collecting cases).

Moreover, even if the complaint were not dismissed, the Court should still dissolve the preliminary injunction. The D.C. Circuit has recognized that dissolving a preliminary injunction is appropriate where there is "'a significant change in factual conditions or in law' such that continued enforcement of the injunction would be 'detrimental to the public interest.'" *Doe 2 v. Shanahan*, 755 F. App'x 19, 22 (D.C. Cir. 2019) (reversing denial of motion to dissolve preliminary injunction given significant changes to challenged policy) (quoting *Horne v. Flores*, 557 U.S. 433, 447 (2009)). Here, the fact that the November election has come and gone is a significant change in circumstances that bears on all four preliminary injunction factors. Even were there any uncertainty regarding whether Plaintiffs' claims are moot (which there is not), that uncertainty alone would weigh heavily against Plaintiffs' likelihood of success on the merits. Nor can they show any continued threat of irreparable harm. The balance of the equities and public interest also counsel in favor of dissolving an injunction that was entered to prevent disenfranchisement in an election that has concluded and in which all Plaintiffs voted, yet imposes continuing limitations on the actions of the Postal Service. Accordingly, the Court's October 8, 2020 preliminary injunction order should be dissolved.

## CONCLUSION

The Court should dismiss Plaintiffs' complaint or, in the alternative, dissolve the preliminary injunction.

Date:   November 24, 2020

Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

ERIC R. WOMACK
Assistant Branch Director
Federal Programs Branch

/s/ John Robinson
JOSEPH E. BORSON
KUNTAL CHOLERA
ALEXIS ECHOLS
DENA M. ROTH
JOHN ROBINSON (D.C. Bar No. 1044072)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
(202) 616-8489
john.j.robinson@usdoj.gov