## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

THERESA RICHARDSON *et al.*,

               Plaintiffs,

      v.

DONALD J. TRUMP, *in his official capacity as President of the United States*, *et al.*,

               Defendants.

Civil Case No. 1:20-cv-02262 (EGS)

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT AS MOOT OR, IN THE ALTERNATIVE, <u>TO DISSOLVE THE PRELIMINARY INJUNCTION</u>

BERG & ANDROPHY

David H. Berg
(*Admitted pro hac vice*)
Joel M. Androphy
D.D.C. Bar No. 999769
James W. Quinn
(*Admitted pro hac vice*)
Bronwyn M. James
(*Admitted pro hac vice*)
120 West 45th Street, 38th Floor
New York, NY 10036
Tel: (646) 766-0073

*Attorneys for Plaintiffs*

OF COUNSEL:

Kathryn Page Berg
120 West 45th Street, 38th Floor
New York, NY 10036
(*Admitted pro hac vice*)
Tel: (646) 766-0073

## **TABLE OF CONTENTS**

FACTUAL AND PROCEDURAL BACKGROUND............................................................ 2

   I.   Defendants' Ongoing Failure To Comply With The Preliminary Injunctions .................. 2

   II.   Defendants' Unrelenting Campaign Against Mail-In Voting............................. 6

LEGAL STANDARDS ............................................................................................. 9

   I.   Standing and Mootness ............................................................................ 9

   II.   Two Applicable Exceptions to Mootness ...................................................... 10

ARGUMENTS ...................................................................................................... 11

   I.   Plaintiffs' Claims Are Not Moot ................................................................. 11

      A.   Voluntary Cessation Does Not Provide A Basis For Mootness ................................. 14

      B.   Plaintiffs' Claims Are Capable Of Repetition Yet Evading Review.......................... 15

   II.   This Court Should Not Dissolve The Preliminary Injunction .......................................... 16

   III.   This Court Should Conduct Contempt Proceedings ....................................... 16

CONCLUSION ...................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

CASES                                                                                          PAGE(S)

*Aref v. Lynch*,
    833 F.3d 242 (D.C. Cir. 2016) ................................................................................... 10

*Attias v. Carefirst, Inc.*,
    865 F.2d 620 (D.C. Cir. 2017) ................................................................................... 9

*Branch v. FCC*,
    824 F.2d 37 (D.C. Cir. 1987) ..................................................................................... 15

*Chafin v. Chafin*,
    568 U.S. 165 (2013) ................................................................................................... 10

*Cooter & Gell v. Hartmarx Corp.*,
    496 U.S. 384 (1990) ................................................................................................... 17

*Doe 2 v. Shanahan*,
    755 F. App'x 19 (D.C. Cir. 2019) ............................................................................. 16

*FEC v. Right to Life, Inc.*,
    551 U.S. 449 (2007) ................................................................................................... 10

*Gutierrez v. U.S. Dep't of Homeland Sec.*,
    2019 WL 6219936 (D.D.C. Nov. 21, 2019) .............................................................. 10

*Holmes v. FEC*,
    823 F.3d 69 (D.C. Cir. 2016) ..................................................................................... 10

*Indep. Inst. v. FEC*,
    216 F. Supp. 3d 176 (D.D.C. 2016) .......................................................................... 15

*Lee ex rel. M.L. v. SEED Pub. Charter Sch.*,
    2020 WL 4923619 (D.D.C. Aug. 21, 2020) ........................................................ 9, 13

*Libertarian Party v. D.C. Bd. of Elections & Ethics*,
    768 F. Supp. 2d 174 (D.D.C. 2011) .......................................................................... 15

*Narragansett Indian Tribe Historical Pres. Off. v. FERC*,
    949 F. 8 (D.C. Cir. 2020) ........................................................................................... 9

*R.I.L-R v. Johnson*,
    80 F. Supp. 3d 164 (D.D.C. 2015) ............................................................................ 10

*Richardson v. Trump*,
    2020 WL 5969270 (D.D.C. Oct. 8, 2020) ................................................... 2, 9, 11, 13

*Susan B. Anthony List v. Driehaus*,
    134 S. Ct. 2334 (2014).............................................................................................. 9

*Turner v. Rogers*,
    564 U.S. 431 (2011)........................................................................................... 10, 15

*Turner v. U.S. Agency for Glob. Media*,
    2020 WL 6822780 (D.D.C. Nov. 20, 2020) .................................................... 10, 13

*Wisconsin Right To Life, Inc. v. FEC*,
    466 F. Supp. 2d 195 (D.D.C. 2006) ....................................................................... 15

*Zukerman v. USPS*,
    961 F.3d 431 (D.C. Cir. 2020) ................................................................... 10, 11, 14

Plaintiffs Theresa Richardson, Christopher Carroll, Gina Arfi, and Aida Zygas ("Zygas" and, collectively, "Plaintiffs"), by and through their undersigned attorneys, respectfully submit the following memorandum of law in opposition to Defendants' Motion To Dismiss Plaintiffs' Complaint As Moot Or In The Alternative, To Dissolve The Preliminary Injunction (the "Motion," ECF No. 140).

## PRELIMINARY STATEMENT

Defendants Donald J. Trump ("Trump"), Louis DeJoy ("DeJoy") and United States Postal Service ("USPS" and, collectively, "Defendants") have admittedly failed to comply with this Court's Orders, including but not limited to the October 8, 2020 Order issuing a preliminary injunction in this case (the "Preliminary Injunction," Dkt. No. 64). The Court previously indicated that it agreed with Plaintiffs' counsel that it would be appropriate for Defendants to produce emails related to the Preliminary Injunction and to similar injunctions filed in three related cases before this Court (collectively, the "Preliminary Injunctions"[1]) and for DeJoy to be deposed or provide testimony regarding Defendants' noncompliance.

Now, having never produced a single email or any document related to complying with the various Preliminary Injunctions, Defendants are attempting to avoid providing such evidence and testimony and escape any consequences for their contemptuous conduct by seeking to have Plaintiffs' claims dismissed as moot or, in the alternative, to dissolve the Preliminary Injunction. For the reasons set forth in Plaintiffs' portions of the parties Joint Proposal of Further

---

[1] The term "Preliminary Injunctions" is used herein to refer to the Preliminary Injunction issued in this case (ECF No. 64) and to the following Orders issuing preliminary injunctions in related cases before this Court: (1) Order, *NAACP v. USPS*, No. 20-cv-02295 (EGS) (D.D.C. Oct. 10, 2020), ECF No. 31; (2) Order, *Vote Forward v. DeJoy*, No. 20-cv-02405 (EGS) (D.D.C. Sept. 28, 2020), ECF No. 31; and (3) Order, *State of New York v. Trump*, No. 20-cv-02340 (EGS) (D.D.C. Sept. 27, 2020), ECF No. 51.

Proceedings (the "Joint Proposal," Dkt. No. 131) and the additional reasons discussed further

below, this Court should find that Plaintiffs' claims are not moot.  Because Plaintiffs' claims are

not moot, and because USPS's performance has not meaningfully improved and Defendants'

unrelenting campaign against mail-in voting has continued, the Preliminary Injunction should not

be dissolved.   Additionally, Plaintiffs ask this Court to conduct such further proceedings in this

matter as may be necessary (including, but not limited to, ordering the production of emails and

other relevant documents and conducting a hearing or deposition to obtain the testimony of

DeJoy, as set forth in Plaintiffs' Proposed Order, submitted herewith) to determine whether

Defendants should be held in contempt for their failure to comply with the Preliminary

Injunctions and other Orders of this Court – which, notwithstanding Defendants' assertions to the

contrary – continues to date.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.   Defendants' Ongoing Failure To Comply With The Preliminary Injunctions

On October 8, 2020, this Court issued the Preliminary Injunction which, among other

things, enjoined "Defendants . . . from enforcing the Late/Extra Trips Policy" and ordered

Defendants to "authorize all overtime necessary to ensure the timely delivery of Election Mail."

(Preliminary Injunction at 1)  In its opinion accompanying the Preliminary Injunction, this Court

explained that the "Late/Extra Trips Policy" referred to "changes prohibiting 'late trips' and

'extra trips'" implemented at USPS in July 2020 and noted that, as a result of this policy, "[b]y

August 13, 2020, USPS had reduced the number of extra trips by 71 percent.  Defendants have

since clarified that late or extra trips are not 'banned,' however, they acknowledge[d] that they

continue 'at a reduced level.'"  *Richardson v. Trump*, 2020 WL 5969270, at *2 (D.D.C. Oct. 8,

2020) (citations omitted).

On October 22, 2020, Plaintiffs filed an Emergency Motion to Enforce and Monitor Compliance with Preliminary Injunction (the "Emergency Motion," Dkt. No. 66), asserting that Defendants appeared to have failed to comply with the Preliminary Injunctions in this case and related cases.  As explained in the Emergency Motion, for more than two weeks after the first Preliminary Injunction was issued, USPS made no efforts to comply with the Preliminary Injunctions because Defendants "did not ban [late and extra trips]" and, thus, "there wasn't anything to change."[2]  (Emergency Motion at 4-5 (quoting Transcript of Deposition of Robert Cintron, dated Oct. 15, 2020, ECF No. 66-4, at 158:24 – 159:15))

As explained in the Joint Proposal, at hearings held in response to the Emergency Motion, multiple USPS employees confirmed that no changes were made at USPS in response to the Preliminary Injunction in this case or similar injunctions issued in related cases before this Court.  (*See* Joint Proposal at 6-8)  At a hearing on October 30, 2020, when this Court asked what measures that USPS was taking to comply with the Preliminary Injunctions, USPS Chief Retail and Delivery Officer & Executive Vice President Kristen Seaver ("Seaver") testified that USPS was simply doing what is "traditional" and what is done "[e]very election year."  (Oct. 30, 2020 Hearing Transcript, attached as Ex. A, at 15:20-24; *see also id.* at 12:10-12 (explaining that USPS was following its "normal procedure for the Sunday before the national election, we have done this in previous national election years"))

As explained in further detail in the Joint Proposal, under questioning from Plaintiffs' counsel David Berg ("Berg"), Seaver testified that she reports directly to DeJoy, discussed the

---

[2] To the extent that Defendants argue that late and extra trips were not "banned," as explained in Plaintiffs' Reply to the Emergency Motion (ECF No. 70), the language quoted above from the Court's opinion in this case, and similar language in related cases reflects that this Court enjoined the *reductions* in late and extra trips caused by the Late/Extra Trips Policy.  (*Id.* at 2)

Preliminary Injunctions with DeJoy, and participated with DeJoy "in emails regarding all of the court orders that we've had and what steps we have to take to comply." (Transcript Excerpts of Oct. 30, 2020 Hearing, ECF No. 131-2, at 77:10 – 78:4)  Seaver also indicated that, with assistance, she was "sure" the emails could be produced, and Defendants agreed to "discuss" making such a production.  (*Id.* at 78:11-22; *see also* Joint Proposal at 6-8)

Following the hearing, Berg sent a follow-up email to Plaintiffs' counsel requesting the production of Seaver's emails and related documents (*see* ECF No. 131-3).  At another hearing the next day, Berg told the Court that he would "speak to Mr. Borson about obtaining those emails involving Mr. DeJoy and the implementation of your orders," and this Court stated, "All right.  You know, I agree with you. The document[s] should be produced." (Transcript of October 31, 2020 Morning Hearing ("Oct. 31 Morning Tr."), ECF No. 131-4, at 14:11-14, 15:1-2)  Notwithstanding this Court's agreement that the emails should be produced, Defendants refused to produce them.

At a hearing on November 4, 2020, Berg reiterated that Plaintiffs needed to obtain evidence relating to DeJoy's involvement, because Seaver's testimony made clear "no changes had been made pursuant to [the Preliminary] [I]njunctions" and that "there was . . . [n]o one she reported to except Mr. DeJoy and . . . nothing happens without Mr. DeJoy's knowledge and approval." (Nov. 4, 2020 Hearing Transcript, attached as Ex. B ("Nov. 4 Tr."), at 16:7-13)  Berg then "suggest[ed] that the person that who ought to be in that witness chair would be the Postmaster General or someone who can explain to us why it is that no changes were ever made," because "[w]e've gone from substandard performance and delivery of mail to worse – even worse  performance.  And I would suggest that if anyone had listened to your orders and

not treated them as some benign suggestion, we wouldn't be in this spot today." (*Id.* at 16:14-21)

The Court responded:

> I agree with . . . what Mr. Berg just said.  At some point, I agree the Postmaster is either going to have to be deposed or appear before me and testify under oath about why some measures were not taken after the Court issued its injunction. The Court has been very clear that it expects total compliance with the Court's injunction and I was just as shocked to hear that nothing else was done after the injunction was issued. . . . I'm not going to forget it either.

(*Id.* at 18:2-10, 12)   At the conclusion of the hearing, this Court added that "there are a lot of issues here about whether orders have been complied with or whether people should be held in contempt.  You know what, I'm not going to turn the other cheek on those issues." (*Id.* at 121:19-23)

The most recent available data produced by USPS shows that its performance has not significantly improved.  In the seven days prior to June 15, 2020, despite the pandemic, the first day that DeJoy began serving as Postmaster General (see FAC ¶ 47), USPS averaged 2,300 extra trips per day.  (Table of Number of Extra Trips, ECF No. 66-7, at 3)  During the seven days leading up to the election (from October 27 to November 2) USPS averaged 974 extra trips per day. (Chart of Extra Trips dated Nov. 4, 2020, Dkt. No. 101-1 at 1)  During the most recent seven days for which data are available (from November 17 to 24), USPS averaged 1,033 extra trips per day.  (Chart of Extra Trips dated Nov. 25, 2020, Dkt. No. 142-1, at 2)

In the seven days prior to DeJoy's first day serving as Postmaster General, USPS averaged 4,273 late trips per day.  (Table of Number of Late Postal Trips, Dkt. No. 66-8, at 3)  During the seven days leading up to the election, USPS averaged 2,291 late trips per day. (Chart of Late Trips dated Nov. 4, 2020, Dkt. No. 101-1, at 2)  During the most recent seven-day period for which data are available (from November 17 to 24), USPS averaged 3,110 late trips per day. (Chart of Late Trips dated Nov. 25, 2020, Dkt. No. 142-1, at 4)

This poor performance led this Court to conclude that emails demonstrating DeJoy's involvement in Defendants' failure to comply with the Preliminary Injunctions should be produced.  Instead of complying with Berg's request for those documents, the Plaintiffs now seek to avoid production altogether.

## II.  Defendants' Unrelenting Campaign Against Mail-In Voting

The more general campaign by all Defendants – Trump as well as DeJoy and USPS – to undermine confidence in mail-in voting has also persisted.[3]  Trump's firestorm of tweets casting doubt on the validity of the 2020 election in general and mail-in ballots in particular, which began well before the 2020 election, is unrelenting.  As noted in the Joint Proposal, Trump often tweets multiple baseless claims about mail-in voting fraud in a single day.  (*See* Joint Proposal at 2 (describing three tweets from November 15, 2020)).

For example, on the morning of November 22, 2020, Trump tweeted, "It's all about the signatures on the envelopes.  Why are the Democrats fighting so hard to hide them[?]  We will find massive numbers of fraudulent ballots."[4]  That afternoon, Trump tweeted that during the 2020 election, there were "[p]eople going to vote finding out they have already voted through a fake ballot – go home!"[5]  That evening, Trump tweeted, "In certain swing states, there were

---

[3] Trump has exempted absentee voting from his condemnations, perhaps, one might cynically argue, because he voted absentee.  On the other hand, logic, as opposed to Trump's statement, dictates that there is no significant difference in mailing in an absentee ballot or a mail-in ballot. *See, e.g.*. Marshall Cohen, *'It's the Same Thing: Experts Baffled by Trump's Misleading Distinction Between 'Absentee' and 'Mail-In' Ballots*, CNN (Sept. 25, 2020; 10:47 PM), https://www.cnn.com/2020/07/10/politics/fact-check-trump-absentee-versus-mail-ballots/index.html.

[4] Donald J. Trump (@realDonaldTrump), TWITTER (Nov. 22, 2020; 7:24 AM), https://twitter.com/realDonaldTrump/status/1330487246236028935.

[5] Donald J. Trump (@realDonaldTrump), TWITTER (Nov. 22, 2020; 11:56 AM), https://twitter.com/realDonaldTrump/status/1330555645213483016.

more votes than people who voted, and in big numbers" and that there were "fake ballots."[6] Twitter labeled all three tweets with a warning:  "This claim about election fraud is disputed."

The Joint Proposal describes instances in which others acting on Trump's behalf have furthered his campaign of undermining confidence in mail-in voting (*see* Joint Proposal at 2-4), and since the Joint Proposal was filed, they have continued to do so.  Most notably, Trump's personal lawyer, Rudy Giuliani, told a federal judge in Pennsylvania that there had been "widespread, nationwide voter fraud" in the 2020 election that led to President-Elect Joseph R. Biden, Jr.'s ("Biden") projected victory and asserted that hundreds of thousands of mail-in ballots from Pennsylvania should not be counted because Trump campaign observers could not examine them as they were being counted.[7]

Trump has made clear that he has no plans to end his campaign of misinformation and false allegations about mail-in voting.  On November 23, 2020, after approving the General Services Administration's formal launch of the presidential transition process, Trump tweeted that his administration would be "continuing to pursue our various cases on what will go down as the most corrupt election in American political history" and that he "[w]ill never concede to fake ballots."[8]

---

[6] Donald J. Trump (@realDonaldTrump), TWITTER (Nov. 22, 2020; 11:37 PM), https://twitter.com/realDonaldTrump/status/1330732289018503170.

[7] Dan Mangan & Kevin Breuninger, *'Disgraceful!' – Lawyer Blasts Trump Attorney Giuliani for Seeking to Toss Pa. Votes to Reverse Biden Win*, CNBC (Nov. 17, 2020; 10:30 AM), https://www.cnbc.com/2020/11/17/trump-lawyer-rudy-giuliani-asks-to-join-pennsylvania-vote-case.html.

[8] Donald J. Trump (@realDonaldTrump), TWITTER (Nov. 23, 2020; 11:07 PM), https://twitter.com/realDonaldTrump/status/1331086969183621120.

Importantly, there is concrete evidence that Defendants' campaign against the integrity of mail-in voting is having its intended effect. A Morning Consult poll of a nationally representative sample of 1,663 voters found nearly two-thirds (63%) of Republicans and nearly one in five (18%) of Democrats said that the 2020 election was not free and fair. Of the voters who said the election was not free and fair, more than three in five (76%) chose "Mail-in voting led to widespread voter fraud" as a reason for their answer, and more than two in five (42%) chose "the U.S. Postal Service did not process all of the mail-in ballots" as a reason.[9]

Another recent survey of a nationally representative sample of 1,500 voters by the communications firm Seven Letter found that 79% of Trump voters believe that the election was "stolen" through illegal voting and fraud.[10] Unsurprisingly, Trump immediately capitalized on this finding, tweeting, "Poll: 79 Percent of Trump Voters Believe 'Election Was Stolen' . . . They are 100% correct, but we are fighting hard. Our big lawsuit, which spells out in great detail all of the ballot fraud and more, will soon be filled [sic]. RIGGED ELECTION!"[11]

As noted in the Joint Proposal, Trump's campaign against mail-in voting is unlikely to abate in the foreseeable future. Multiple news outlets have reported that Trump is likely to run again in 2024. (*See* Joint Proposal at 5 & n.10) Even if he does not run again, Trump will likely continue his campaign against mail-in voting. Days after the election, Trump formed a

---

[9] *Election Trust Tracker: As States Certify Results, Most Republicans Continue to Doubt the Integrity of the Election*, MORNING CONSULT (Nov. 24, 2020), https://morningconsult.com/form/tracking-voter-trust-in-elections.

[10] *2020 Voter Priorities Survey* 8, 15, SEVEN LETTER (Nov. 23, 2020), https://sevenletter.com/wp-content/uploads/2020/11/2020-Voter-Priorities-CORE.pdf.

[11] Donald J. Trump (@realDonaldTrump), TWITTER (Nov. 24, 2020; 7:33 AM), https://twitter.com/realDonaldTrump/status/1331214247955738624.

leadership political action committee ("PAC"), "Save America." According to a Trump campaign spokesman, Trump formed the PAC "so that he can support candidates and issues he cares about, such as combating voter fraud."[12]

## LEGAL STANDARDS

### I.   Standing and Mootness

As this Court noted in its prior decision, standing comprises three elements: "(1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Richardson*, 2020 WL 5969270, at *6 (quoting *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014)) (additional internal quotations and citation omitted).

Where, as here, the plaintiffs seek "forward-looking injunctive relief," the requisite injury in fact exists if the plaintiff is "suffering an ongoing injury or faces an immediate threat of injury. For a future injury, that means submitting evidence showing that there is a substantial risk that the harm will recur." *Id.* (quoting *Narragansett Indian Tribe Historical Pres. Off. v. FERC*, 949 F. 8, 13 (D.C. Cir. 2020)). Establishing the element of causation "'does not require that the defendant be the most immediate cause, or even a proximate cause, of the plaintiffs' injuries.'" *Lee ex rel. M.L. v. SEED Pub. Charter Sch.*, 2020 WL 4923619, at *4 (D.D.C. Aug. 21, 2020) (quoting *Attias v. Carefirst, Inc.*, 865 F.2d 620, 625 (D.C. Cir. 2017)). Rather, a sufficient causal connection exists if the plaintiff's injury is "'fairly traceable' to a defendant, where the defendant's conduct was a 'substantial factor' leading to the injury itself." *Id.* (quoting *Tozzi v. U.S. Dep't of Health & Human Servs.*, 271 F.3d 301, 308 (D.C. Cir. 2001)). The element of redressability "typically overlap[s]" with causation, because "if a government action causes an

---

[12] Maggie Haberman, *Trump Forms PAC in Hopes of Keeping Hold on G.O.P.*, N.Y. TIMES (Nov. 9, 2020), https://www.nytimes.com/2020/11/09/us/politics/trump-pac.html.

injury, enjoining the action usually will redress that injury." *Turner v. U.S. Agency for Glob. Media*, 2020 WL 6822780, at *15 (D.D.C. Nov. 20, 2020) (citation omitted).

"[T]he doctrine of mootness can be described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 178 (D.D.C. 2015). A case becomes moot "only when it is impossible for a court to grant 'any effectual relief whatever' to the prevailing party." *Zukerman v. USPS*, 961 F.3d 431, 442 (D.C. Cir. 2020) (citation omitted). "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Id.* (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)).

## II.   <u>Two Applicable Exceptions to Mootness</u>

There is an "established exception to mootness for disputes capable of repetition yet evading review." *Holmes v. FEC*, 823 F.3d 69, 71 n.3 (D.C. Cir. 2016) (quoting *FEC v. Right to Life, Inc.*, 551 U.S. 449, 462 (2007)). This exception applies if "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again." *Turner v. Rogers*, 564 U.S. 431, 440 (2011).

Additionally, "[t]he Supreme Court has held that, where voluntary cessation of a challenged practice causes a case to become moot, federal courts may still determine the legality of the practice" unless: "(i) 'there is no reasonable expectation . . . that the alleged violation will recur,' and (ii) 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Gutierrez v. U.S. Dep't of Homeland Sec.*, 2019 WL 6219936, at *5 (D.D.C. Nov. 21, 2019) (quoting *Aref v. Lynch*, 833 F.3d 242, 251 (D.C. Cir. 2016)). A party

asserting that its voluntary cessation renders claims moot bears the "'heavy burden' of making it absolutely clear that the allegedly wrongful behavior could not be expected to recur." *Zukerman*, 961 F.3d at 436.

## ARGUMENTS

### I.        Plaintiffs' Claims Are Not Moot

In its prior decision, this Court correctly found that Plaintiffs had standing to bring their claim for violation of their constitutional right to vote.[13] *Richardson*, 2020 WL 5969270, at *7. In their memorandum in support of the Motion (the "Memo," ECF No. 140-1), Defendants argue that Plaintiffs can no longer show injury because Plaintiffs' claims were "based solely on an alleged injury of a potential inability to vote by mail in the November 2020 election" and Plaintiffs' "opportunity to vote by mail in that election has come and gone." (Memo at 5)  In fact, each Plaintiff did cast a vote, but this argument rests on an overly narrow reading of Plaintiffs' First Amended Complaint (the "FAC," Dkt. No. 49).  As explained in the Joint Proposal, Plaintiffs' constitutional claims alleging conspiracy to violate, and substantive violation of, Plaintiffs' right to vote are based not only on actions that directly "impede[d] the distribution of absentee and mail-in ballots," but also on conduct undertaken by all Defendants, including Trump – directly and through agents acting on his behalf – to "sow distrust in the results of the 2020 general election" by making "false statements . . . about mail-in voter fraud" and mounting a "campaign of intimidation designed to discourage Plaintiffs and other

---

[13] This Court's decision did not expressly address Plaintiffs' claims for conspiracy to violate the right to vote or for *ultra vires* agency action. *See Richardson*, 2020 WL 5969270, at *7.  For the reasons articulated herein, Plaintiffs have standing to pursue all three claims.

11

American[s] from exercising their constitutional right to vote."  (FAC ¶¶190-191)  That

campaign has continued long after Election Day and, indeed, continues to date.  (*See supra*, p. 5)

Moreover, having cast a vote may prove meaningless to at least one Plaintiff.  As a direct

result of Defendants' campaign to undermine mail-in voting and the integrity of the 2020

election, Plaintiff Zygas' vote in the 2020 election may not be counted.  Zygas voted by mail in

Dane County, Wisconsin.  (*See* Joint Proposal at 4)  On November 18, 2020, Trump and Vice

President Michael R. Pence petitioned for a recount in Dane County and Milwaukee County,

alleging that "mistakes and fraud were committed throughout the State of Wisconsin, including

particularly . . . throughout Dane County and Milwaukee County in the counting and return of

votes cast in the election for President of the United States," noting that "[t]he Wisconsin

Legislature has rightly concluded that . . . voting by absentee ballot must be carefully regulated

to prevent the potential for fraud or abuse."[14]  Trump then filed at least three objections seeking

to discard tens of thousands of absentee ballots in the recount.  Although Trump's objections

have thus far been denied, Dane County Clerk Scott McDaniel has stated that the believes the

Trump campaign is building a record before filing a lawsuit.[15]   Additionally, on November 24,

2020, the conservative Wisconsin Voters Alliance and several other petitioners – who, upon

information and belief, were acting on behalf of Trump – filed an Emergency Petition seeking to

invalidate the presidential election results for the entire state and have the Republican-controlled

---

[14] Recount Pet. ¶ 2, *In re The 2020 Election for President of the United States* (Nov. 18, 2020)
(quoting Wis. Stat. Ann. § 6.84(1)).

[15] Scott Bauer, *Trump Objects To Counting Thousands of Wisconsin Ballots*, ASSOCIATED PRESS
(Nov. 20, 2020), https://apnews.com/article/election-2020-joe-biden-donald-trump-madison-
wisconsin-852ac9f03fcbb8a0b407f66b055c9171.

state legislature appoint Wisconsin's presidential electors.[16]   Thus, Defendants' assertion that

"election-related lawsuits . . . have nothing to do with the individual Plaintiffs" is demonstrably

incorrect.  (Memo at 6)

Defendants' assertion that these "remaining disputes over the election" are not part of the

conduct "alleged in the [First Amended] Complaint" (*id.* at 7) is also incorrect because, as

explained above, these lawsuits and disputes are part of Defendants' campaign to "sow doubt in

the mind of Americans about the integrity of the electoral process" described in the FAC as part

of the basis for Plaintiffs' conspiracy claim.  (FAC ¶ 18; *see also id.* ¶¶ 190-191)

Thus, Plaintiffs have plainly established an "ongoing injury" – the continued risk that

their mail-in ballots, including the ballot cast by Zygas in the 2020 election, will not be counted.

*Richardson*, 2020 WL 5969270, at * 6.  That injury is "fairly traceable" to Defendants' conduct

– namely, (1) DeJoy's and USPS's ongoing failure to timely deliver the mail, in defiance of this

Court's Preliminary Injunctions; (2) Trump's refusal to recognize that mail-in ballots cast in the

2020 election, including the ballot cast by Zygas, are valid; and (3) Defendants' continuing

campaign of tweets and public statements designed to undermine confidence in mail-in voting

and thus, of the presidential election itself.  *Lee ex rel. M.L.*, 2020 WL 4923619, at *4.  Plaintiffs

have also established redressability, because "enjoining [Defendants' conduct] will redress

[Plaintiffs'] injury."  *Turner*, 2020 WL 6822780, at *15.

Plaintiffs have also established the "substantial risk that the harm will recur" necessary to

have standing based on a future injury.  *Richardson*, 2020 WL 5969270, at *6.  Trump's

ominous threat to file a "big lawsuit" relating to the 2020 election, claims that he "will never

---

[16] Emergency Pet. for Original Action, *Wis. Voters Alliance v. Wis. Elections Comm'n*, Case No.
2020AP001930 (Wis. Nov. 24, 2020), Dkt. No. 1, ¶¶ 2-4.

concede to fake ballots" and establishment of a PAC for the purpose of "combating voter fraud" (*supra,* p. 6-7), as well as Defendants' continued poor performance and the fact that DeJoy will remain in office until a new Postmaster General is appointed (*supra*, p. 9) provide clear evidence that if Defendants' conduct is not enjoined, Defendants will continue to discourage and denigrate mail-in voting in future elections, creating a substantial risk that Plaintiffs will be unable to vote by mail in the 2022 and 2024 elections.[17]  As noted in the Joint Proposal, Biden will not be able to remove DeJoy, who is appointed by the USPS Board of Governors, which is dominated by Trump appointees.  (*See* Joint Proposal at 9 & n.12; *see also* FAC ¶ 15)

### A.    Voluntary Cessation Does Not Provide A Basis For Mootness

Defendants' claim that they have "fully complied" with the Preliminary Injunctions and voluntarily ceased to implement the Late/Extra Trips Policy that this Court enjoined (Memo at 10) is belied by their own data, discussed above, which demonstrates that USPS's performance has not meaningfully improved.  (*See supra*, p. 5)  In light of this data, USPS has plainly failed demonstrate that Defendants' "voluntary actions have completely eradicated the effects of [their] alleged violations."  *Zukerman*, 961 F.3d at 443.  Defendants have also failed to meet their "'heavy burden' of making it 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'"  *Id.* at 436.  Thus, Defendants' purported voluntary cessation of the Late/Extra Trips Policy does not provide a basis to find Plaintiffs' claims moot.

---

[17] Notwithstanding Defendants' suggestions to the contrary, Plaintiffs' claims were not limited to "the November 2020 election."  (Memo at 5)  In fact, Plaintiffs' constitutional claims expressly state that they are "not limited to . . . the 2020 presidential election" (FAC ¶¶ 187, 192 (emphasis added)), and Plaintiffs' statutory claim refers to "infringement of their constitutional right to vote," without reference to any particular election.  (Id. ¶ 210)

B.    **Plaintiffs' Claims Are Capable Of Repetition Yet Evading Review**

Even if Plaintiffs' claims were otherwise moot – and they are not – Plaintiffs' claims fall

within the exception to mootness for controversies "capable of repetition yet evading review."

*Holmes*, 823 F.3d at 71 n.3.  Although Defendants suggest that "numerous courts have dismissed

. . . claims as moot after the election at issue has taken place," in the cases cited by Defendants,

the court found that it could not "grant any effective relief."  (Memo at 6)  By contrast, here, this

Court can grant relief by, for example, issuing orders directing Defendants to take further steps

to comply with the Preliminary Injunctions or issuing a permanent injunction.   Moreover, all of

the cases Defendants cite are from other circuits.  The D.C. Circuit has expressly stated that

"[c]ontroversies that arise in election campaigns are *unquestionably* among those saved from

mootness under the exception for matters 'capable of repetition, yet evading review.'"

*Wisconsin Right To Life, Inc. v. FEC*, 466 F. Supp. 2d 195, 202 (D.D.C. 2006) (quoting *Branch

v. FCC*, 824 F.2d 37, 41 n.2 (D.C. Cir. 1987)).

Notwithstanding Defendants' assertions to the contrary (Memo at 9), Plaintiffs' claims

plainly satisfy both prongs of this exception.  As to the first prong, "a case or controversy

generally is considered 'too short to be fully litigated prior to its cessation or expiration'" where,

as here, "the lifespan of the dispute is less than two years." *Indep. Inst. v. FEC*, 216 F. Supp. 3d

176, 183 (D.D.C. 2016); *see also, e.g.*, *Libertarian Party v. D.C. Bd. of Elections & Ethics*, 768

F. Supp. 2d 174, 178 (D.D.C. 2011) (finding challenge to election write-in procedures were not

moot because "challenges to election procedures often take longer to resolve than the election

cycle itself" and "it is likely that the [plaintiff] . . . and voters will participate in future elections

in the District of Columbia"), *aff'd*, 682 F.3d 72 (D.C. Cir. 2012).  As to the second prong,

Plaintiffs plainly have a "reasonable expectation" that they will be "subjected to the same

[conduct] again." *Turner*, 564 U.S. at 440, because, as explained above, USPS's performance

15

has not meaningfully improved, and there is ample evidence that Defendants' near-constant barrage of attacks on mail-in voting will continue into the foreseeable future, including the 2022 and 2024 elections.  (*See supra*, pp. 5, 8-9)

**II.   This Court Should Not Dissolve The Preliminary Injunction**

To the extent Defendants argue that the Preliminary Injunction should be dissolved because Plaintiffs' claims are moot (Memo at 11), Defendants' argument fails because, for the reasons stated above, Plaintiffs' claims are not moot.  Defendants' argument that a "significant change in factual conditions" renders "continued enforcement of the injunction . . . 'detrimental to the public interest'" also fails.  (*Id.* at 12 (citation omitted)).  In *Doe 2 v. Shananan*, upon which Defendants rely, the government "took substantial steps to cure the . . . deficiencies" in its conduct that led to the injunction at issue.  755 F. App'x 19, 23 (D.C. Cir. 2019).  Defendants have taken no such steps here, as evidenced by the fact that – as noted above – USPS's performance has not meaningfully improved.

**III.   This Court Should Conduct Contempt Proceedings**

This Court has previously agreed that Seaver's emails "should be produced" (Oct. 31 Morning Tr. at 15:2) and "agree[d] the Postmaster is either going to have to be deposed or appear before me."  (Nov. 4 Tr. at 18:5)  This Court also made clear that it was "not going to forget" Defendants' failures to comply with the Preliminary Injunctions and related orders, that "there are a lot of issues here about whether orders have been complied with or whether people should be held in contempt," and that the Court was "not going to turn the other cheek on those issues." (*Id.* at 121:19-23)

While Defendants assert that contempt proceedings will "not create a 'case or controversy' that would permit Plaintiffs to maintain their suit" (Motion at 11), Defendants do

not – and cannot – dispute the fact that a case and controversy existed when this Court found that

there were "issues here about whether orders have been complied with or whether people should

be held in contempt." (Nov. 4 Tr. at 121:19-23)   As Defendants themselves acknowledge, "'[i]t

is well established that a federal court may consider collateral issues' – such as contempt – 'after

an action is no longer pending" and thus, a "court can 'make an adjudication of contempt and

impose a contempt sanction even after the action in which the contempt arose has been

terminated.'" (Memo at 11 (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396

(1990))   USPS's continued poor performance (*see supra*, p. 5) makes clear that Defendants have

still failed to fully comply with this Court's Preliminary Injunctions and, thus, contempt

proceedings are still necessary and appropriate.   Accordingly, regardless of whether Plaintiffs'

claims are otherwise dismissed as moot, Plaintiffs ask this Court to issue the Proposed Order

submitted herewith directing the production of emails and other documents relating to

implementation of the Preliminary Injunction and directing DeJoy to appear and show cause why

he should not be held in contempt for failing to direct USPS to immediately and fully implement

the Preliminary Injunction and related orders, and hold such other and further proceedings as

may be necessary to make an adjudication on the issue of Defendants' contempt.   To the extent

that DeJoy has been or will be ordered to be deposed or to appear at in court proceedings in cases

related to this action, the Plaintiffs in this action request permission to participate in such

depositions and/or proceedings.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants'

Motion in its entirety and issue Plaintiffs' Proposed Order submitted herewith.

Dated: Washington, D.C.
     November 25, 2020

                            Respectfully submitted,

                            BERG & ANDROPHY

                            /s/ *David H. Berg*

                            David H. Berg
                            (*Admitted pro hac vice*)
                            Joel M. Androphy
                            D.D.C. Bar No. 999769
                            James W. Quinn
                            (*Admitted pro hac vice*)
                            Bronwyn M. James
                            (*Admitted pro hac vice*)
                            120 West 45th Street, 38th Floor
                            New York, NY 10036
                            Tel: (646) 766-0073

                            *Attorneys for Plaintiffs*

                            OF COUNSEL:

                            Kathryn Page Berg
                            120 West 45th Street, 38th Floor
                            New York, NY 10036
                            (*Admitted pro hac vice*)
                            Tel: (646) 766-0073

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on November 25, 2020, I electronically transmitted the attached brief and

accompanying exhibits using the CM/ECF system for filing and transmittal of a Notice of

Electronic Filing to all CM/ECF registrants for this case.

Dated: Washington, D.C.
        November 25, 2020

*/s David H. Berg*