**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TERESA RICHARDSON, *et al.*, | |
| Plaintiffs, | Civil Docket No. 20-cv-2262 (EGS) |
| v. | |
| DONALD J. TRUMP, *et al.*, | |
| Defendants. | |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT AS MOOT OR, IN THE ALTERNATIVE, TO DISSOLVE THE PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 3

I.       PLAINTIFFS' OPPOSITION CONFIRMS THIS CASE IS MOOT ............................... 3

       A.      Plaintiffs Have Not Alleged any Injury that Is Ongoing and Redressable
              by this Court ................................................................................................. 3

       B.      The "Voluntary Cessation" Doctrine Is Irrelevant ................................. 5

       C.      Plaintiffs' Claims Are Not "Capable of Repetition, Yet Evading Review" ........... 6

II.      IN THE ALTERNATIVE, THE COURT SHOULD DISSOLVE THE
       PRELIMINARY INJUNCTION ......................................................................... 8

III.     WHETHER PLAINTIFFS SEEK TO PURSUE CONTEMPT IS IRRELEVANT
       TO THIS MOTION ........................................................................................ 9

CONCLUSION ................................................................................................................ 11

## TABLE OF AUTHORITIES

**CASES**

*Am. Fed'n of Gov't Emps. v. Rivlin*,
  995 F. Supp. 165 (D.D.C. 1998) ............................................................... 8

*Burdick v. Takushi*,
  504 U.S. 428 (1992) ................................................................................. 5

*Conyers v. Reagan*,
  765 F.2d 1124 (D.C. Cir. 1985) ............................................................... 6

*Doe 2 v. Shanahan*,
  755 F. App'x 19 (D.C. Cir. 2019) ............................................................ 9

*Halberstam v. Welch*,
  705 F.2d 472 (D.C. Cir. 1983) ................................................................. 5

*Herron for Cong. v. FEC*,
  903 F. Supp. 2d 9 (D.D.C. 2012) ............................................................. 7

*Int'l Union, United Mine Workers of Am. v. Bagwell*,
  512 U.S. 821 (1994) ............................................................................... 11

*Nat'l Urban League v. DeJoy*,
  Civ. A. No. GLR-20-2391, 2020 WL 6363959 (D. Md. Oct. 29, 2020) ............................ 9, 10

*Richardson v. Trump*,
  ___F. Supp. 3d___, 2020 WL 5969270 (D.D.C. Oct. 8, 2020) ............................... 10

*Sibley v. Alexander*,
  916 F. Supp. 2d 58 (D.D.C. 2013) ............................................................ 7

*United States v. Int'l Union, United Mine Workers of Am.*,
  190 F.2d 865 (D.C. Cir. 1951) ............................................................... 11

*United States v. Sanchez-Gomez*,
  138 S. Ct. 1532 (2018) .......................................................................... 6, 7

*Wisc. Right to Life, Inc. v. FEC*,
  466 F. Supp. 2d 195 (D.D.C. 2005) .......................................................... 6

*Zukerman v. U.S. Postal Serv.*,
  961 F.3d 431 (D.C. Cir. 2020) ................................................................. 5

**RULES**

Fed. R. Civ. P. 65 ..................................................................................... 2

**OTHER AUTHORITIES**

11A Charles Alan Wright, Arthur R. Miller & Mary K. Kane,
   *Federal Practice and Procedure* § 2960 (Oct. 2020 update)................................................... 11

## INTRODUCTION

Plaintiffs' opposition confirms that this case is moot. This case began with a complaint by four individual voters that certain alleged Postal Service policy changes would cause them injury "during the Presidential election on November 3" if they were to "fail to receive their mail-in or absentee ballots" for that election. Am. Compl. ¶ 19. Plaintiffs were clear that it was this "irreparable injury . . . that brings Plaintiffs to this court." *Id.* But that purported injury, allegedly caused by the Postal Service's policies, no longer exists, as Plaintiffs have confirmed that they each voted in the November election.

In the absence of that original injury—the only one actually alleged in the Complaint—Plaintiffs now seek to expand this case to encompass *anything and everything* having to do with that election, even if it has nothing to do with the Postal Service or Postal Service policies. For example, Plaintiffs complain about a recount in Wisconsin (which has now concluded), even though there is no Postal Service involvement in that process and no opportunity for plaintiffs to cast another vote. They cite statements made by President Trump or his campaign's lawyers, even though they are entirely unrelated to the alleged Postal Service policies challenged here. Plaintiffs also complain that Postal Service delivery scores are not what Plaintiffs would want them to be, even though their complaints find no basis in an actual legal claim or an injury alleged by a named Plaintiff. Based on these new, amorphous complaints about the conduct of government, Plaintiffs seek extraordinary discovery, including a deposition of the Postmaster General. *See* Pls.' Supp. to Joint Proposal of Further Proceedings, ECF No. 146.[1]

---

[1]   Defendants will be filing a separate response to Plaintiffs' recent filing requesting leave to file their second set of document requests and a notice of the deposition of the Postmaster General.

As this Court is well aware, the limitations of Article III do not permit the litigation of the generalized grievances that Plaintiffs apparently now seek to pursue. Plaintiffs bear the burden of demonstrating standing throughout this litigation, and the relief that they seek must be tied to specific and concrete injuries that can be redressed by this Court. But that purported harm no longer exists, due to circumstances that are entirely out of either side's control. Plaintiffs have therefore failed to demonstrate standing to continue this dispute, let alone the irreparable injury that is necessary for the continuance of the injunction previously entered by this Court.

Nor can Plaintiffs manufacture a case or controversy that does not otherwise exist by requesting contempt proceedings to assess the Postal Service's compliance with the Court's preliminary injunction. Plaintiffs agree with Defendants that their assertions of contempt can be addressed after a case is dismissed, and so the possibility of such proceedings does not provide a basis to deny the motion to dismiss, particularly when such proceedings would be entirely unwarranted. Plaintiffs assert noncompliance based on data that they say shows that the Postal Service's performance has not improved, but Plaintiffs cannot credibly argue that this Court's preliminary injunction mandated a particular level of performance under threat of contempt sanctions—an injunction that was neither requested by Plaintiffs nor permitted by Federal Rule of Civil Procedure 65(d)(1)(C). If anything, Plaintiffs' sweeping and unreasonable view of the preliminary injunction demonstrates the complete lack of merit in their continued attacks on the behavior of the Postal Service.

Because Plaintiffs admit that they have voted in the November election, and concede that they will have no future opportunity to vote in a federal election until 2022 at the earliest, the Court should dismiss this case as moot.

2

## ARGUMENT

## I.   PLAINTIFFS' OPPOSITION CONFIRMS THIS CASE IS MOOT

### A.   Plaintiffs Have Not Alleged any Injury that Is Ongoing and Redressable by this Court

In their Opposition, Plaintiffs confirm that they were each able to vote in the November 2020 election. Pls.' Opp. 11. They also concede that the next opportunity to cast a vote in a federal election would be 2022 at the earliest. *See id.* at 13–14. These concessions demonstrate that the sole injury that Plaintiffs alleged in their complaint—a risk that they would "fail to receive their mail-in or absentee ballots" "during the presidential election on November 3"—is moot. *See* Am. Compl. ¶ 19. Because Plaintiffs voted, they cannot show that the injury alleged in their complaint—a potential inability to vote by mail—continues to constitute the actual or imminent injury that is required to maintain their suit. Nor can Plaintiffs establish the elements of causation or redressability. Indeed, even if Plaintiffs had not been able to vote by mail in the election, there is no relief that this Court could order against the Defendants in this case that would redress that result.

Unable to establish continued standing based on the injury actually alleged in their Complaint, Plaintiffs in their opposition attempt to expand their theory of harm to encompass any purported injury related to the election, even if completely unrelated to the behavior of the Postal Service. For example, Plaintiffs now argue that even though they each voted in the election, one of those votes "may prove meaningless" because Plaintiff Aida Zygas voted in Wisconsin. Pls.' Opp. 12. Plaintiffs note that there was a recount underway in Wisconsin (a recount that has since concluded)[2] and that certain groups have filed election-related lawsuits in

---

[2] *See* Associated Press, *Milwaukee County Vote Recount Gives Biden Small Boost*, Nov. 27, 2020, https://apnews.com/article/election-2020-joe-biden-donald-trump-politics-madison-f454c8ffd90651ea7e994c25464b8b0c.

Wisconsin. On this basis, Plaintiffs contend that they have "plainly established" an ongoing

injury in "the continued risk that their mail-in ballots, including the ballot cast by Zygas in the

2020 election, will not be counted." Pls.' Opp. 13.

Of course, that purported harm has nothing to do with this case. Plaintiffs brought this

suit against the Postal Service, the Postmaster General, and President Trump, in his official

capacity, to enjoin specific Postal Service policy changes. There is no relief that could be ordered

against any of these Defendants that would affect whether Plaintiffs' votes—which have already

been cast—are counted in state final vote tallies, let alone any Postal Service policy that has

anything to do with the counting of Plaintiffs' votes. If Plaintiffs truly believe that there is an

imminent risk that their votes will not be counted, nothing prevents them from seeking relief

against the relevant election authorities in the respective states in which they voted. But there is

simply no continuing basis for Plaintiffs to maintain *this* case against *these* Defendants based on

the claims alleged in the Complaint.

The same is true of Plaintiffs' criticism of comments made by the President or his

campaign's lawyers. Plaintiffs confusingly suggest that the Second Count of their First Amended

Complaint ("Civil Conspiracy to Violate Plaintiffs Constitutionally Protected Right to Vote"),

*see* Am. Compl. ¶¶ 189–192, remains live because these comments purportedly continue to "sow

doubt in the mind of Americans about the integrity of the electoral process." Pls.' Opp. 13. But it

is entirely unclear how Plaintiffs could credibly make such an argument. As Plaintiffs themselves

explained in characterizing their lawsuit in the First Amended Complaint, the "conspiracy" they

imagined (but have never proven) was one intended to "purposely compromis[e] the right to vote

of Plaintiffs . . . by making false statements about widespread mail-in voter fraud . . . *and by*

*significantly slowing down mail delivery of flat mail*." Am. Compl. at 1 (emphasis added).

4

Indeed, Count II of the Complaint rested expressly on the allegation that "Trump and DeJoy, using USPS, have acted in concert *to impede the distribution of absentee and mail-in ballots, discourage mail-in voting* and sow distrust in the results of the 2020 general election, in violation of American citizens' constitutionally protected right to vote." *Id.* ¶ 190 (emphasis added). In other words, Plaintiffs' "election conspiracy" claim depended on both the ability of the individual plaintiffs to vote in that election and, specifically, to the Postal Service's role in delivering their votes. After all, without an election, there could be no violation of the right to vote. *See Burdick v. Takushi*, 504 U.S. 428, 441 (1992) (right to vote is the "right to participate in an electoral process"). And without the Postal Service, there could be no "conspiracy" of one. *See Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983) (civil conspiracy requires "agreement between two or more persons"). Again, Plaintiffs may believe that they have new theories of injury that support new claims for a new lawsuit. But their current claims in this case, alleging harms based solely on an ability to vote in an election that has since taken place, are undeniably moot.

### B.    The "Voluntary Cessation" Doctrine Is Irrelevant

In arguing that they should nevertheless be allowed to maintain their suit, Plaintiffs seek refuge in two familiar exceptions to mootness. The first is voluntary cessation, under which courts have held that "[a]s a general rule, voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*, does not make the case moot." *Zukerman v. U.S. Postal Serv.*, 961 F.3d 431, 442 (D.C. Cir. 2020); *see* Pls.' Opp. 14.

Relying on this doctrine, Plaintiffs argue that the Postal Service's "voluntary cessation of the Late/Extra Trips Policy does not provide a basis to find Plaintiffs' claims moot." Pls.' Opp. 14. Putting aside the continuing debate over whether the Postal Service ever had any such policy to begin with, Plaintiffs' argument is the reddest of herrings. Defendants' motion to dismiss did

not rely on the actions of the Postal Service as a basis for mootness. Instead, Defendants rely on the fact that an intervening event *totally outside of Defendants' control*—the November 2020 election—renders Plaintiffs' claims moot. *See* Defs.' Mem. in Support of Mot. to Dismiss ("Defs.' Mem.) 4–10. Accordingly, the "voluntary cessation" doctrine has no bearing on whether this case should be dismissed as moot.

### C.   Plaintiffs' Claims Are Not "Capable of Repetition, Yet Evading Review"

Plaintiffs also assert that this case fits within the exception to mootness for claims that are capable of repetition yet evading review, but Plaintiffs cannot meet either of that limited exception's two requirements.

First, Plaintiffs have not demonstrated that "the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration." *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1540 (2018). Although Plaintiffs note that courts have held that "a case or controversy generally is considered too short to be fully litigated prior to its cessation or expiration" if the "lifespan of the dispute is less than two years," Pls.' Opp. 15, they offer no explanation as to how that presumption helps avoid dismissal here. If Plaintiffs have claims relating to the 2022 and 2024 elections to which they point, they would have time to fully litigate such claims before those elections. *See id.* at 13–14, 16. But those claims are not the basis of the complaint in this case.

To be sure, election-related claims challenging election procedures may sometimes qualify for the "capable of repetition, yet evading review" exception, because they often arise only in the days and weeks leading up to an election. *See id.* at 15 (citing *Wisc. Right to Life, Inc. v. FEC*, 466 F. Supp. 2d 195, 202 (D.D.C. 2005)); *see also Conyers v. Reagan*, 765 F.2d 1124, 1128 (D.C. Cir. 1985). But unlike election-related restrictions imposed on actions immediately leading up to an election, Plaintiffs have no reason to believe that the Postal Service's continuing

6

policies about late or extra trips and their connection, if any, to elections, could only be litigated in a similar time period.

In any event, no court has held that claims of election-related injury will *always* satisfy the exception to mootness. Indeed, as Defendants noted in their opening memorandum, courts have often dismissed claims related to an election as moot after the election took place. *See* Defs.' Mem. 6. And this is only more true when a plaintiff seeks to litigate about policies that may or may not take place in the future. *See, e.g.*, *Sibley v. Alexander*, 916 F. Supp. 2d 58, 62 (D.D.C. 2013) (plaintiff's suit to enjoin electors from casting ballots was moot after election because "th[e] court has no power to alter the past"; case did not fall under "capable of repetition, yet evading review" exception because claims of future injury were "too vague, conjectural, and speculative"); *Herron for Cong. v. FEC*, 903 F. Supp. 2d 9, 15 (D.D.C. 2012) (challenge to Federal Election Commission's failure to penalize opponent was moot after election took place; case did not fall under exception because claim "rest[ed] entirely on an unlikely chain of hypothetical occurrences" in the future).

Plaintiffs contend that the cases cited in Defendants' motion are distinguishable because the courts there held that they could not "grant any effective relief," Pls.' Opp. 15. Of course, the same is true here—there is no relief that the Court could grant that would redress Plaintiffs' alleged injury. *See supra* Section I.A.

But even if Plaintiffs could establish that the policies they seek to challenge are of an inherently short duration sufficient to establish the first prong of the test, there is no question that they would founder at the second. Plaintiffs simply cannot demonstrate a "reasonable expectation" that they "will be subjected to the same action again." *Sanchez-Gomez*, 138 S. Ct. at 1540. Plaintiffs ignore the numerous cases rejecting the argument that a dispute may remain live

based on speculation that an agency may reimplement a challenged policy in the future, *see* Defs.' Mem. at 9–10, including this Court's decision in *American Federation of Government Employees v. Rivlin*, 995 F. Supp. 165 (D.D.C. 1998). Indeed, in *Rivlin*, plaintiffs challenged a government policy (requiring federal employees to work without compensation during a lapse in appropriations) that was mooted by an intervening event (the passage of a budget). *Id.* at 166. There, as here, plaintiffs argued that the case fell within the "capable of repetition, but evading review" exception because of the possibility that the issue could recur. *Id.* Yet this Court held, correctly, that plaintiffs had "not demonstrated that there is a reasonable expectation that *they* will be subjected to the same action again," as "[i]t would be entirely speculative for th[e] Court to attempt to predict if, and when, another lapse in appropriations may occur, how long that lapse might be, which agencies might be subject to the lapse, which employees might be affected, and whether employees will be required to work without compensation." *Id.* The same is true here: it would be speculative to predict what policies the Postal Service may have leading up to the next election that could affect the delivery of election mail, whether those policies will be the same as the policy changes alleged here, how those policies will affect plaintiffs (if at all), and whether plaintiffs will intend to vote (and if so, whether they will intend to vote by mail). *See* Defs.' Mem. 8.

Plaintiffs therefore cannot establish either requirement of the narrow exception to mootness for claims that are "capable of repetition, yet evading review."

## II.    IN THE ALTERNATIVE, THE COURT SHOULD DISSOLVE THE PRELIMINARY INJUNCTION

Even if Plaintiffs' complaint were somehow capable of surviving Defendants' motion to dismiss, the Court should still dissolve the preliminary injunction. As Defendants explained, the occurrence of the November 2020 election constitutes a "significant change" that renders

continued enforcement of the injunction neither necessary nor appropriate. *See* Defs.' Mem. 11–12. Plaintiffs do not seriously contend otherwise. While Plaintiffs note that the government in *Doe 2 v. Shanahan*, 755 F. App'x 19 (D.C. Cir. 2019), had taken "substantial steps to cure . . . the deficiencies" in the policy at issue, nothing in *Doe 2* suggests that a court can or should maintain an injunction that no longer serves its intended purpose simply because Plaintiffs question whether the government has cured the deficiencies they identified in their complaint. Now that the election has passed, Plaintiffs cannot continue to assert that they are at risk of suffering imminent, irreparable harm or that any of the other preliminary injunction factors can justify keeping the injunction in place. *See* Defs.' Mem. 11–12. Accordingly, at a minimum, the preliminary injunction should be dissolved.

## III.   WHETHER PLAINTIFFS SEEK TO PURSUE CONTEMPT IS IRRELEVANT TO THIS MOTION

The majority of Plaintiffs' opposition is not devoted to establishing the existence of a live dispute. It is instead devoted to a series of continued, *ad hominem* attacks on the actions of the Postal Service to comply with the Preliminary Injunction. *See* Pls.' Opp. 1–9, 12–13, 16–17. According to Plaintiffs, the Postal Service's "continued poor performance" "makes clear" that it "failed to fully comply with this Court's Preliminary Injunctions" and "thus, contempt proceedings are still necessary and appropriate." *Id.* at 17.

This theory for contempt is both extraordinary and meritless. Plaintiffs do not, because they cannot, identify any provision of the Court's preliminary injunction order that mandates any particular level of service performance. Nor did Plaintiffs request such relief in their motion for a preliminary injunction, and for good reason. As one court explained when another set of plaintiffs requested that the Postal Service "restore" performance to prior levels, "[t]he Court could no sooner order Defendants to restore on-time performance to [a particular level] . . . than

it could order a baseball player to achieve a .300 batting average over his next several games."
*Nat'l Urban League v. DeJoy*, No. CV GLR-20-2391, 2020 WL 6363959, at *9 (D. Md. Oct. 29,
2020). As that court recognized, service performance is a "holistic metric that reflects the results
of a combination of a host of factors, some internal to and controllable by USPS, and some
external and outside of USPS's control." *Id.* And because the court "cannot require a party to
meet a metric it can only partially control," an order requiring a particular level of performance
is neither "a practicable [n]or enforceable request." *Id.* Moreover, while Plaintiffs criticize the
Postal Service for "continued poor performance," they do not actually cite any evidence
suggesting that its performance is, in fact, poor. Plaintiffs instead rely on data about the number
of "late" and "extra" trips per day, *see* Pls.' Opp. 5, but those statistics say nothing about the
Postal Service's general "performance" in delivering the mail. To the contrary, they confirm that
the Postal Service has *complied* with the Court's preliminary injunction.

Instead of mandating any particular level of service performance, the Court's order (i)
"enjoined [Defendants] from enforcing the Late/Extra Trips Policy," ECF No. 65, defined as an
alleged policy "prohibiting 'late trips' and 'extra trips," *Richardson v. Trump*, No. CV 20-2262
(EGS) 2020 WL 5969270, at *2 (D.D.C. Oct. 8, 2020), and (ii) required Defendants to
"authorize all overtime necessary to ensure the timely delivery of Election Mail," ECF No. 65.
As Defendants have explained, there can be no question that the Postal Service complied with
these orders. *See, e.g.*, Defs.' Opp. to Pls.' Mot. to Enforce 6–13, ECF No. 69 (discussing
numerous communications in which Postal Service made clear that late and extra trips were not
banned and that overtime was authorized to ensure timely delivery of Election Mail); ECF No.
69-1 (September 21 instruction that "the Postmaster General has not banned the use of late or
extra trips" and that Postal Service had not imposed any new restrictions on overtime); ECF No.

10

69-2 (September 24 communication that late or extra trips "should not be restricted if they are reasonably necessary to complete timely delivery" and that "[o]vertime is authorized and instructed to be used as necessary to fulfill our mission and expeditiously move Election Mail); ECF No. 69-3 (September 25 communication conveying same information); ECF No. 69-4 (October 13 communication); ECF No. 69-5 (October 16 communication).

In any event, as Plaintiffs appear to concede in their opposition, arguments about contempt are irrelevant to the present motion. That is because a contempt proceeding, whether civil or criminal, does not preclude dismissal of the underlying action. As to civil contempt, such a sanction is "designed to compel future compliance with a court order." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994). Accordingly, not only does a civil contempt proceeding not keep alive an otherwise moot action, "a civil-contempt proceeding [itself] becomes moot upon the termination of the controversy that gave rise to the underlying litigation." 11A Charles Alan Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 2960 (Oct. 2020 update) (collecting cases); *see also United States v. Int'l Union, United Mine Workers of Am.*, 190 F.2d 865, 873 (D.C. Cir. 1951) (purpose of civil contempt proceeding is "wholly remedial, to serve only the purposes of the complainant" and so, after parties settled, it was "clear . . . under the[] circumstances the contempt proceeding is moot"). Criminal contempt may continue "after an action is no longer pending." *See* Defs.' Mem. 10–11.

Accordingly, even if contempt proceedings were warranted, which they are not, the potential for such proceedings in the future does not render this moot dispute a live one.

## CONCLUSION

The Court should dismiss Plaintiffs' complaint or, in the alternative, dissolve the preliminary injunction.

Date:   December 1, 2020                    Respectfully submitted,

                                           JEFFREY BOSSERT CLARK
                                           Acting Assistant Attorney General

                                           ERIC R. WOMACK
                                           Assistant Branch Director
                                           Federal Programs Branch

                                           /s/ John Robinson
                                           JOSEPH E. BORSON
                                           KUNTAL CHOLERA
                                           ALEXIS ECHOLS
                                           DENA M. ROTH
                                           JOHN ROBINSON (D.C. Bar No. 1044072)
                                           Trial Attorneys
                                           U.S. Department of Justice
                                           Civil Division, Federal Programs Branch
                                           1100 L Street, NW
                                           Washington, D.C. 20005
                                           (202) 616-8489
                                           john.j.robinson@usdoj.gov